**Paul D. JESCHKE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5602.

Supreme Court of Wyoming.

April 6, 1982.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, and Sylvia Lee Hackl, Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Cr. Div., Allen C. Johnson, Sr. Asst. Atty. Gen., Michael L. Hubbard, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Mr. Jeschke appeals his conviction for involuntary manslaughter pursuant to § 6–4-107, W.S.1977.[1] Appellant was found guilty of causing the death of two and one-half-year-old Andrew Halverson through acts amounting to "criminal carelessness" or "culpable neglect." He now asks us to reverse the conviction, and raises the following issues for our review:

(1) Did the prosecutor's comments, in his closing argument, amount to plain error so that appellant was denied his constitutional right to a fair trial?

(2) Did the trial court err in refusing to give appellant's offered instructions?

We will affirm.

## FACTS

Carmen Linderman and her son Andrew Halverson arrived at appellant's trailer house in Gillette, Wyoming during the early morning hours of December 20, 1980. Ms. Linderman was the appellant Jeschke's second cousin, and had been in Wyoming for a couple of weeks prior to this visit.

A few days after their arrival, Ms. Linderman and Andrew slipped on the steps leading into appellant's trailer. This occurred on December 24, 1980. As a result of the fall, Andrew suffered a bruise on his

chin and nausea throughout the evening hours of the 24th. Only a month earlier Andrew had been hospitalized in Minnesota because he had complained of headaches and nausea. Although tests failed to develop any conclusive cause, Andrew was apparently suffering from some form of trauma to the head which was affecting his nervous system. The testimony does not reflect, however, that upon his return to Wyoming the child's condition was improving and the headaches and nausea had ceased. Due to Andrew's somewhat unstable condition, Ms. Linderman inquired of the Minnesota hospital as to whether the incident might aggravate the child's recovery. She was informed that most likely the fall would have no effect on Andrew's recovery, and to watch him carefully.

On December 25, 1980, Ms. Linderman left the trailer house at approximately 1:30 p. m. to run some errands. At the time she left, Andrew seemed fine and was playing in his room alone. Upon arriving back at the trailer some forty-five minutes later, Ms. Linderman discovered her son lying down on his bed, face up, in a comatose state. Mr. Jeschke gave Ms. Linderman no information on what had happened to the child, but he did, after several requests, assist her in taking Andrew to the hospital.

The child never regained consciousness and, on December 27, 1980, was officially pronounced dead at Denver Children's Hospital. The doctor at the hospital testified that upon admittance Andrew showed no signs of life and his body was covered with numerous bruises and abrasions.

Approximately one month after the incident, officers of the Campbell County sheriff's office requested appellant to come to their office because of their belief that appellant was implicated in Andrew's death. Appellant voluntarily appeared and, after being read his rights, related to the officers

---

1. Section 6–4–107, W.S.1977, Cumm.Supp. 1981, reads:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of

some unlawful act, except as provided in W.S. 31–5–1117, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

that on December 25, 1980 he had pushed Andrew because the child had disturbed him while he was on the phone. The push, which appellant admitted was too hard, caused Andrew to strike his head severely on the floor. Appellant was then arrested and charged with the crime for which he was later convicted.

## IMPROPER CLOSING ARGUMENT

■ Mr. Jeschke complains that the prosecutor, in his closing argument, interjected improper comment which reflected a personal opinion with respect to his guilt, and which was designed to inflame the passions of the jurors. Appellant's counsel did not, however, object at the time these allegedly improper statements were made. The following comprise the complained-of statements:

"And I want to submit to you the State's theory of the case. And my theory of the case is that Paul Jeschke never just shoved that little boy down. I think Paul Jeschke—and I think the evidence supports this theory—beat that little boy. I think he beat him unmercifully. I think that's what those bruises are. There's bruises all over that little boy, and he died as a result."

and,

"The only thing ... that we haven't done, talking in the trial or talking right now, is to consider Andrew Halverson's side of this story ...

I submit to you that Paul Jeschke beat this child unmercifully, and I want you to consider what went through that little boy's mind while it was going on. I want you to think about being three foot, one inch tall and 38 pounds and two-and-a-half years old and being assaulted as viciously as this little baby was. I want you to think about the terror that must have gone through his mind, and I want you to look at Paul Jeschke. I want you to look at him closely, and I want you to ask yourself if he should be punished for what he has done.

And I submit to you that he should be. And I submit to you that the only justifi-

cation for Andrew Halverson's death is that Paul Jeschke won't be allowed to do this again."

We note that, since appellant's counsel failed to object at the time the comments were made, the rule of *Oldham v. State*, Wyo., 534 P.2d 107 (1975) controls. There we made it clear:

"It is to be noted that defendant made no objection to statements of the prosecutor at the time of the argument, but relied upon an objection made and a motion for mistrial after the close thereof. This court has long adhered to the rule that timely objection must be made, *Horn v. State*, 12 Wyo. 80, 73 P. 705, 727; *Cavaness v. State*, Wyo., 358 P.2d 355, 359; *State v. Spears*, 76 Wyo. 82, 300 P.2d 551, 562; and it is our view that objections should be made at the time of such statements so that the trial court might correct the same by admonition." 534 P.2d at 112.

The general rule in Wyoming is that a failure to interject a timely objection to an allegedly improper argument is treated as a waiver, unless the misconduct is so flagrant as to constitute plain error, thus requiring reversal. *Jones v. State*, Wyo., 580 P.2d 1150, 1153 (1978). In order for appellant to succeed he must, therefore, show not only that the comments were improper but also that they amounted to "plain error."

■ As we have noted on many occasions, the plain-error doctrine will only be applied when there has been a transgression of a clear and unequivocal rule of law, in a clear and obvious way, which adversely affects a substantial right of the accused. See: *Browder v. State*, Wyo., 639 P.2d 889 (1982); *Hampton v. State*, Wyo., 558 P.2d 504 (1977); *Hays v. State*, Wyo., 522 P.2d 1004 (1974). Since no objection was logged in this case, we will review each statement separately in light of the above rule.

■ We do not agree with appellant that the first comment by the prosecutor was improper. In presenting a closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable

inferences from that evidence in order to assist the jury in its function. *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981); *State v. Morgan*, 128 Ariz. 362, 625 P.2d 951 (1981); *Bowen v. State*, Okl.Cr., 606 P.2d 589 (1980). The purpose of closing argument is to give both the prosecution and defense counsel the opportunity to explain the significance of the evidence and how it should be viewed. *Hopkinson v. State*, supra; *Mayer v. State*, Wyo., 618 P.2d 127 (1980). Finally, we have previously said that the scope of permissible argument, as well as the injury caused by misconduct, are best determined by the trial judge. *Hopkinson v. State*, supra; *Mayer v. State*, supra; *Oldham v. State*, supra.

In this case, we cannot view the first complained-of comment as anything but a permissible comment on the evidence properly interjected by the prosecutor. Not only did the county attorney preface the statement with the fact that he was relating the State's theory of the case, but he was, of course, also free to draw inferences from the medical testimony that the bruises on the boy's body were caused by the appellant. He was commenting on evidence which was contained in the record, and was not interjecting his personal opinion as to the guilt of the accused. In our view, the first of the allegedly improper comments falls well within the latitude given prosecutors in presenting the State's case to the jury through closing argument.

In regard to the second alleged improper comment, we agree with the appellant that in requesting the jury to put themselves in the place of the victim the prosecutor overstepped the bounds of permissible argument. We do not, however, believe that the impermissible comment rose to the level of plain error.

Notwithstanding the rules, outlined above, which reflect the ability of prosecutors to reflect on the evidence and draw inferences during closing argument, there is also a well-recognized rule which says that closing arguments should not be designed to inflame the passion and prejudice of the jury. *Hopkinson v. State*, supra. Likewise,

in arguing to the jury, the prosecutor should refrain from argument designed to inject issues into the trial which are broader than the guilt or innocence of the accused under the controlling law. *Jones v. State*, supra. In *Jones*, 580 P.2d at 1154, we cited with approval ABA Standards, Prosecution Function § 5.8(d) (1979), which provides:

" '(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' "

Here, by asking the jury to place themselves in the position of the child-victim and by informing the jury that the only justification should be that the accused be punished, the prosecutor was injecting into the minds of the jurors issues which are broader than the question of the defendant's guilt or innocence. The argument was also, in our opinion, injected for the purpose of appealing to the passions and prejudices of the jurors. As such, the improper comments were certainly erroneous. However, although the prosecutor's argument transgressed a clear and unequivocal rule of law in a clear and obvious way, we do not believe that the error affected a substantial right of the accused. As we said in *Jones v. State*, supra:

"The right with which we are concerned is the fundamental right to a fair trial, free from tainted argument. * * * A reversal and remand for new trial—because of prosecutorial misconduct—will not be ordered as punishment for a prosecutor's misdeeds, but only because such misdeeds denied the accused a fair trial." 580 P.2d at 1154.

When the prosecutor's argument is viewed as a whole, we are not able to conclude that this singular plea to the passions of the jury in any way affected the appellant's rights to a fair trial. In our view, the case was not as close as appellant asserts and therefore we do not believe the prosecutor's comment rose to the level of

plain error requiring reversal. We do note, however, that our decision is not intended to tempt prosecutors to walk the tight rope between error and prejudicial reversible error, but rather is intended to reiterate those areas that a prosecutor must avoid in appealing the State's case to the jury. Prosecutors must always keep in mind that their duty is to seek justice, not merely to convict, which is most certainly a difficult duty to be carried out carefully and cautiously. *Valerio v. State*, Wyo., 527 P.2d 154, 157 (1974).

## REFUSED INSTRUCTION

Appellant also complains that the trial judge erred in refusing to give his offered Instructions A and B. Proposed Instruction A provided:

"The terms 'criminal carelessness' or 'culpable neglect' as used in these instructions refer to a negligent act which is aggravated, reckless and gross and which is such a departure from what would be the conduct of an ordinary prudent or careful man under the same circumstances as to be contrary to a proper regard for human life or, in other words, a disregard for human life, or, an indifference to the consequences. The facts must be such that the fatal consequences of the careless or negligent act could reasonably have been foreseen and it must appear that the death was not the result of misadventure but the natural and probable consequences of a reckless or grossly negligent act."

and proposed Instruction B read:

"Your [sic] are instructed that the existence of 'criminal carelessness' or 'culpable neglect' must be determined from the defendant's conduct alone and not from the resultant harm."

Instead of the above requested instructions, the trial judge gave the following instruction offered by the prosecution which was taken verbatim from the Wyoming Pattern Jury Instructions, Criminal § 7.510. Instruction No. 9, as given, read:

"The terms 'culpable neglect' and 'criminal carelessness' have the same meaning. Culpable negligence and criminal carelessness are much more than ordinary negligence and must be of a gross or flagrant character, such as would show wantonness or recklessness, or would demonstrate a reckless disregard of human life or the safety of others, or an indifference to consequences equivalent to criminal intent."

The appellant now claims, as he did at trial, that the instructions given by the court failed to adequately apprise the jury of the terms "culpable neglect" and "criminal carelessness" and also that the jury was not guided in what it should consider when deciding if his conduct satisfied these standards of conduct. We believe that appellant's claim of error is without merit or support.

■ The general rule in reviewing questions involving instructions is that if a refused instruction has been adequately covered by others given by the court, even if the refused instruction stated correct propositions of law, refusal of the requested instruction is not error. See: *Campbell v. State*, Wyo., 589 P.2d 358 (1979); *Channel v. State*, Wyo., 592 P.2d 1145 (1979); *Benson v. State*, Wyo., 571 P.2d 595 (1977). Also, we have often said that it is proper to review a claimed error involving an instruction in light of all the instructions read as a whole. *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); *Snyder v. State*, Wyo., 599 P.2d 1338 (1979).

■ When we place the instructions given by the court side by side with appellant's proposed instructions, we do not find error. In fact the definitions given by the trial court in Instruction No. 9 are strikingly similar to those provided by appellant. Also, the court, through Instruction No. 12, delineated for the jury the fact that ordinary negligence is not the same as "culpable neglect" or "criminal carelessness." That instruction read:

"Ordinary negligence is the lack of ordinary care. It is the failure of a person to [sic] something that an ordinary person would do, or the act of a person in doing

something that an ordinary person would not do, measured by all of the circumstances then existing."

Taken in this light, we cannot say that any error occurred when appellant's proposed Instructions A and B were refused. The jury was properly informed that, in order to find appellant guilty, his conduct would have to satisfy the definitions provided. It certainly was apprised that such conduct must be greater than ordinary negligence.

We find no error or prejudice in either the prosecutor's argument or the instructions.

Affirmed.