THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY McCALL *et al.*, Defendants-Appellants.

Second District    Nos. 2—87—1210, 2—87—1211 cons.

Opinion filed October 24, 1989.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellants.

James E. Ryan, State's Attorney, of Wheaton, and Michael Shevick, of Chicago (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a jury trial, defendants, Jerry and Nick McCall, were convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)). Jerry was adjudged a habitual criminal pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 et seq.) and sentenced to natural-life imprisonment. Nick was sentenced to nine years' imprisonment. Defendants brought separate appeals from their convictions, and we consolidated the appeals for oral argument and disposition. Nick contends that the trial court erred in admitting evidence of another crime and further alleges that he was denied a fair trial by the State's improper use of that evidence in its closing argument. Jerry similarly argues that he was denied a fair trial by the

State's closing argument and further contends that he was not proved guilty beyond a reasonable doubt and that the Habitual Criminal Act pursuant to which he received a natural-life sentence is unconstitutional. We affirm as to both defendants.

On March 5, 1987, defendants were indicted for the armed robbery of a Fayva shoe store. Prior to trial, defendants brought motions *in limine* seeking, *inter alia*, to bar the State from introducing evidence of another shoe-store robbery occurring six days prior to the charged offense. The State sought to introduce evidence of the other crime for the purpose of establishing identity and *modus operandi*. The trial court denied defendants' motions to bar introduction of that evidence, and the case proceeded to trial on September 29, 1987.

The State's first witness was Elizabeth Engeldinger, an assistant manager of a Fayva shoe store located in Wheaton, Illinois. Engeldinger testified that on December 29, 1986, at approximately 5 p.m., a man entered the store, proceeded to the men's aisle, and tried on a pair of boots. Engeldinger described the man as approximately 38 years old, 5 feet 8 inches, 170 pounds, with dark brown hair, and dark eyes. Engeldinger testified that a younger man entered the store approximately two minutes later. Shortly thereafter, the older man approached Engeldinger, displayed a gun, and instructed her to go to the back room of the store. Engeldinger and the older man then approached Engeldinger's co-worker, Margaret Leavitt, at which time the older man again displayed his gun, "cocked" it with his left hand, and instructed both employees to proceed to the back room. The parties were subsequently met by the younger man, who also displayed a gun. Engeldinger identified the older of the two perpetrators as defendant Jerry McCall, and the younger man as defendant Nick McCall. Engeldinger further testified that Jerry McCall, who at the time of the trial wore glasses, a beard, and had gray hair, looked different at the time of the offense.

Engeldinger next testified that she accompanied the younger man to the front of the store while the older man and Leavitt went into the stock room. Engeldinger stated that as she walked toward the front of the store she observed the older man put on a white, transparent, latex rubber glove. Upon reaching the front of the store, Engeldinger opened the safe and cash drawer and placed the contents into an empty shoe box. The younger man then instructed Engeldinger to return to the stock room. Upon reaching the stock room, Engeldinger observed Leavitt handcuffed to the bathroom door. Engeldinger stated that the older man then instructed her to handcuff herself to a metal rack and assisted her in doing so. At that time,

the older man was wearing rubber gloves. The older man left the stock room after advising Engeldinger and Leavitt that a curious customer would soon discover them. Leavitt subsequently released herself, locked the store, and called police.

Engeldinger next testified that she related the events of the incident and described the perpetrators to the police. Engeldinger stated that she assisted Detective Jeffrey Ludman in composing a sketch of the younger perpetrator while Leavitt assisted Detective Ludman in composing a sketch of the older perpetrator.

Engeldinger next testified that on February 12, 1987, she viewed a series of photographs and identified one of the pictures as depicting the older perpetrator "except for the beard." Engeldinger testified that the man she identified was Jerry McCall. On February 19, 1987, Engeldinger viewed a photo lineup and identified one of the men depicted as the younger perpetrator. Engeldinger testified that the man she identified was Nick McCall. On February 20, 1987, Engeldinger viewed two lineups. Engeldinger testified that one lineup consisted of five middle-aged men wearing orange jumpsuits. Although Engeldinger thought that one of the men in the lineup, later identified as Jerry McCall, looked like the older perpetrator, she was unable to make a positive identification. Engeldinger testified that the second lineup consisted of men in their late twenties wearing orange jumpsuits. Engeldinger identified one of the men in the lineup as the younger perpetrator and stated that she was absolutely positive of that identification. Engeldinger testified that the man she identified in the second lineup was Nick McCall.

On cross-examination, Engeldinger testified that the older perpetrator did not have glasses or a beard. Engeldinger also testified that the older perpetrator had dark brown hair and brown eyes, while the man she thought looked familiar in the first lineup had gray hair, a mustache, and pale green eyes. Engeldinger repeated that she was not absolutely sure of her identification of the older man at the time of the lineup. Engeldinger further testified that the older perpetrator used his left hand to remove a pair of boots from the shelf, cock his gun, and remove the rubber gloves from his pocket. Engeldinger testified that the older man did not have a cast on his left hand, but further stated that she could not see the older man's left wrist as it was covered by his jacket. On redirect, Engeldinger stated that while she was not sure about her identification of the older man at the time of the lineup, she was absolutely sure at trial. Engeldinger testified that she was positive that Jerry McCall was the older perpetrator because she remembered his "beady" eyes.

Margaret Leavitt substantially corroborated Engeldinger's testimony concerning the robbery. Leavitt further testified that she assisted Detective Ludman in composing a sketch of the older perpetrator, but noted that she was not satisfied with the sketch because it did not look like the older perpetrator. However, at trial Leavitt identified the older perpetrator as Jerry McCall and the younger perpetrator as Nick McCall.

Leavitt next testified that on February 12, 1987, she viewed a series of photographs and identified one of the pictures as depicting the older perpetrator. Leavitt stated that the picture looked like the older perpetrator except his hair was shorter and he had a beard in the picture. Leavitt testified that the man she identified was Jerry McCall. On February 19, 1987, Leavitt viewed a photo lineup and identified one of the men depicted as looking like the younger perpetrator. Leavitt was unable to make a positive identification from the photograph. On February 20, 1987, Leavitt viewed two lineups. Leavitt picked a man from the first lineup as the older perpetrator and identified him in court as Jerry McCall. Leavitt picked a man from the second lineup as the younger perpetrator and identified him in court as Nick McCall. Leavitt stated that she was absolutely positive that the man she picked in the second lineup was the younger perpetrator and noted that she was able to identify him before looking at the remaining people. Leavitt also testified that Jerry McCall looked different in court than he did on the night of the robbery, noting that the older perpetrator did not have a beard or glasses and his hair was brown rather than gray.

On cross-examination, Leavitt stated that she did not see the older perpetrator's left wrist and did not see a cast on his left hand. Leavitt further stated that she thought the older perpetrator's eyes were dark or brown, but admitted at trial that Jerry McCall's eyes were green. On redirect, Leavitt testified that the older man's eyes were distinctive and sunken with dark patches under them.

After eliciting testimony from law enforcement officers involved in the investigation of the offense, the State introduced, over defendants' objections, evidence of an armed robbery at a second shoe store. Kevin Spealman testified that on December 23, 1986, he was working at a Payless Shoe Source store located in Schaumburg, Illinois. Spealman testified that two men walked into the store at approximately 9:10 p.m. Spealman stated that one of the men was in his late thirties or early forties, 5 feet 9 inches to 5 feet 11 inches, with dark hair, and brown eyes. Spealman stated that the second man was in his early twenties, 5 feet 7 inches to 5 feet 9 inches, with "dishwater"

blonde hair. Spealman testified that both men displayed guns in shoulder holsters. Spealman stated that the older man announced a robbery and took Spealman and another store employee into a back room. Spealman then accompanied the younger perpetrator to the cash register. Spealman identified the younger perpetrator as Nick McCall. Spealman stated that he put money from the cash register and safe into a shoe box and returned to the back room, where the older perpetrator handcuffed him to a metal rack. Spealman stated that the other employee was handcuffed to the bathroom door. Spealman also testified that the older perpetrator wore a clear plastic glove on one hand.

Spealman next testified that on February 17, 1987, he viewed a photo lineup and identified one of the men depicted as one of the perpetrators. Spealman testified that the man he identified was Nick McCall. On February 20, 1987, Spealman viewed two lineups. Spealman picked a man from one of the lineups and identified him as one of the perpetrators. Spealman testified that the person he identified was Nick McCall. Spealman viewed a second lineup and, although stating that one of the men, later identified as Jerry McCall, could have been the second perpetrator, he could not make a positive identification. On cross-examination, Spealman testified that the older perpetrator did not wear a cast and did not have a beard. Spealman also testified that he was color blind and, while he could not recognize the color green, nonetheless observed that Jerry McCall's eyes were too light to be considered brown.

Spealman's co-worker, Christine Desmet, substantially corroborated Spealman's account of the robbery. Desmet identified the older perpetrator as Jerry McCall and the younger perpetrator as Nick McCall. Desmet further testified that the older perpetrator removed a rubber glove from his left pocket and placed it on his right hand before handcuffing her to the bathroom door.

Desmet next testified that on February 17, 1987, she viewed a series of photographs and identified one of the men depicted as the younger perpetrator. Desmet testified that the man she identified was Nick McCall. On February 20, 1987, Desmet viewed two lineups. Desmet identified a man from one of the lineups as the younger perpetrator and testified that the man she identified was Nick McCall. Desmet identified a man from the second lineup as the older perpetrator and testified that the man she identified was Jerry McCall. On cross-examination, Desmet testified that she did not see a cast on the older perpetrator's left hand and further testified that the older perpetrator did not have a beard.

Dr. Eugene Bartucci testified on behalf of Jerry McCall. Dr. Bartucci stated that he treated Jerry for a fractured left wrist on December 12, 1986. Dr. Bartucci testified that Jerry's hair color was approximately the same as it was at trial and that Jerry wore a beard. Dr. Bartucci stated that he placed Jerry in a short-arm cast and described the cast as extending from Jerry's elbow across the back portion of his left hand to the first row of knuckles. Dr. Bartucci testified that he next saw Jerry on December 20, 1986, and thought that Jerry had a beard at that time. Dr. Bartucci testified that he saw Jerry again on December 27, 1986, and stated that Jerry was still wearing his cast at that time. Dr. Bartucci removed Jerry's cast on January 17, 1987, and testified that the wrist was tender and painful. Dr. Bartucci recasted Jerry's wrist and did not remove the second cast until January 31, 1987. Dr. Bartucci saw Jerry again on February 16, 1987, and noted that the wrist was stiff and weak. Dr. Bartucci testified that he generally checked casts for fit and changed them if they were loose. Dr. Bartucci further stated that some patients can remove their casts.

On cross-examination, Dr. Bartucci testified that casts can become loose when swelling goes down. Dr. Bartucci also testified that the extent of tenderness and pain on Jerry's wrist was not normal and acknowledged that it was possible that Jerry removed his cast. On redirect examination, Dr. Bartucci stated that he did not see any evidence that Jerry removed his cast.

Joan McCall, Nick McCall's mother, testified on his behalf. Mrs. McCall testified that on December 29, 1986, at approximately 5 p.m., Nick was at home with her and other family members. Mrs. McCall stated that Nick helped prepare and clean up after dinner, played cards with other family members, and watched a video tape. Mrs. McCall also described Nick's appearance at the time and stated that he was approximately 6 feet 1 inch, 215 pounds, had brown eyes, and blonde hair.

During the rebuttal portion of the State's closing argument, the State summarized the evidence from both the robbery in the instant action and the uncharged robbery introduced as evidence to show identity and *modus operandi*. During rebuttal, the State argued that it had "four eyewitnesses" and further characterized defendants as "professionals." Defendants did not object to these references. At the conclusion of the trial, the jury returned guilty verdicts against both defendants. The court entered judgment on the verdicts and continued the cause for post-trial motions and sentencing.

On November 6, 1987, the trial court held a hearing on defendants' motions for a new trial. Jerry McCall argued, *inter alia*, that

the identification testimony was not sufficient to establish his guilt beyond a reasonable doubt, the trial court erred in introducing evidence of the uncharged robbery, and he was denied a fair trial by the State's rebuttal argument characterizing him as a "professional." Jerry's counsel also noted that Jerry had filed a separate post-trial motion *pro se* in which he raised three allegations of incompetence of counsel. Nick McCall also argued that the trial court erred in introducing evidence of the uncharged robbery and further alleged that he was denied a fair trial on the basis of the State's rebuttal argument characterizing him as a "professional." The trial court denied defendants' motions for a new trial, and the case proceeded to sentencing.

At the sentencing phase of the hearing, the State moved to have Jerry McCall adjudged a habitual criminal under the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*), and tendered certified copies of prior convictions in support of its petition. After admonishment and brief argument, the trial court adjudged Jerry McCall a habitual criminal and sentenced him to natural-life imprisonment. The trial court then received evidence regarding sentencing for Nick McCall. The trial court continued the cause for argument and, on December 4, 1987, sentenced Nick McCall to nine years' imprisonment.

On December 21, 1987, defendants filed separate appeals from their convictions. This court subsequently entered an order allowing Jerry McCall to file a late notice of appeal, and both appeals were consolidated for oral argument and disposition.

We first address Nick McCall's contention that the trial court erred by allowing the State to introduce evidence of other crimes to establish identity and *modus operandi*. Nick argues that because there were two witnesses to the charged offense who positively identified him as the younger perpetrator, the additional evidence was "overkill" and the prejudice of introducing that evidence far outweighed its probative value. We disagree.

■ Evidence of crimes other than the one for which the defendant is being tried is not admissible to show the defendant's propensity to commit crime. (See *People v. McDonald* (1975), 62 Ill. 2d 448, 455; *People v. Triplett* (1981), 99 Ill. App. 3d 1077, 1082.) However, such evidence is generally admissible if relevant for another purpose, such as to show motive, intent, identity, absence of mistake, or *modus operandi*. (*McDonald*, 62 Ill. 2d at 455; *Triplett*, 99 Ill. App. 3d at 1082.) In determining whether to allow introduction of evidence of other crimes, the court must balance the probative value of the evidence against the prejudice to the defendant. (See *Triplett*, 99 Ill.

App. 3d at 1082.) Even where the evidence has substantial relevance for a permitted purpose, it should not be admitted if its probative value is outweighed by its prejudicial effect. (99 Ill. App. 3d at 1082.) In other words, the actual need for the evidence must be considered in light of the relevant issues and the other evidence available to the State and must be balanced against the prejudicial effect its admission will have upon the jury. (*People v. Butler* (1975), 31 Ill. App. 3d 78, 80.) A trial court's determination as to the admissibility of evidence of other crimes will not be reversed unless it constitutes a clear abuse of discretion. *People v. Funches* (1978), 59 Ill. App. 3d 71, 73.

■ In support of his argument that the trial court abused its discretion in the instant action, Nick relies primarily on *People v. Blakely* (1972), 8 Ill. App. 3d 78, and *People v. Butler* (1975), 31 Ill. App. 3d 78. In *Blakely*, the State introduced evidence of an uncharged armed robbery for the purpose of establishing the defendant's identity at his trial on another armed robbery. (*Blakely*, 8 Ill. App. 3d at 82.) The appellate court reversed the defendant's subsequent conviction on the basis that the trial court erred in admitting evidence of the other crime. (8 Ill. App. 3d at 83.) In stating that evidence of other crimes is inadmissible where the identity of the defendant can be clearly shown without the use of such evidence, the court noted that the testimony of the two witnesses to the charged offense was "clear, positive and apparently reliable." (8 Ill. App. 3d at 82-83.) The court further noted that the defendant's cross-examination of one of the witnesses did not shake her identification of the defendant. 8 Ill. App. 3d at 83.

We decline to follow *Blakely* in light of our supreme court decision in *People v. Tiller* (1982), 94 Ill. 2d 303, *cert. denied* (1983), 461 U.S. 944, 77 L. Ed. 2d 1302, 103 S. Ct. 2121. In *Tiller*, the court stated that "[t]he prosecution is not precluded from presenting evidence of other crimes for a proper purpose merely because it had some other evidence on that point." (*Tiller*, 94 Ill. 2d at 318.) As such, we do not believe that the trial court abused its discretion in admitting evidence of the uncharged robbery under the circumstances presented here. Nick disclosed that he would be presenting an alibi defense at trial and listed four persons who were allegedly with him on the night of the offense. Nick maintained his alibi defense at trial, and his counsel vigorously cross-examined the witnesses to the charged offense concerning both their ability to observe the perpetrators and the quality of their observations. In particular, Nick's counsel spent a considerable amount of time questioning Engeldinger about the quality of her observations of Nick while she was opening the safe and cash drawer

for him. In addition, on both direct and cross-examination, Leavitt stated that she could not make a positive identification of Nick McCall from the photo lineup. Under these circumstances, introduction of the evidence was not only proper but prudent.

Nick also cites *People v. Butler* (1975), 31 Ill. App. 3d 78, 80, for the proposition that evidence of other crimes introduced to establish identity should be limited to such details as showing the opportunity for identification and not the details of the crime. Nick thus challenges the testimony of the witnesses to the uncharged robbery on the basis that their testimony focused on the similarities between the crimes rather than their opportunity to observe the perpetrators in the uncharged crime.

We note that the State offered the evidence of the other crime to establish *both* identity and *modus operandi*. In any event, unlike the situation presented in *Butler*, where the court noted that the "details were clearly unrelated to the crime in question and were unnecessary to establish identity" (*Butler*, 31 Ill. App. 3d at 81), much of the testimony concerning the details of the uncharged crime in the instant action also served to establish the witnesses' opportunity to observe. Nick's counsel vigorously cross-examined the witnesses to the uncharged robbery on these points as well. Based on the record before us, we conclude that the trial court did not abuse its discretion in admitting evidence of the other crime in this action.

Nick next contends that he was denied a fair trial by the State's closing argument on the basis that the State "freely blended" evidence of the uncharged crime with the charged offense and further characterized defendants as "professionals." Jerry also argues that he was denied a fair trial on this basis. We disagree.

■ We initially note that, while both defendants raised this issue in their post-trial motions, neither objected to the challenged references during the State's closing argument. Generally, such a failure constitutes a waiver of the claimed error on appeal. (See *People v. Threadgill* (1988), 166 Ill. App. 3d 643, 650.) However, this court may consider an unpreserved issue where the claimed error affects substantial rights of the defendant or where the verdict of the jury may have resulted from the error. (See 107 Ill. 2d R. 615(a); *Threadgill*, 166 Ill. App. 3d at 650.) We elect to review the propriety of the State's closing argument on this basis. See *People v. Lasley* (1987), 158 Ill. App. 3d 614, 626-27.

■ Generally, a prosecutor is allowed wide latitude in closing argument. (*Lasley*, 158 Ill. App. 3d at 625.) However, statements made in closing argument which serve no purpose except to inflame the

jury constitute error. (*Threadgill*, 166 Ill. App. 3d at 651.) The test for determining if the prosecutor's comments constitute reversible error is whether the remarks, considered in light of all the evidence, were a material factor in the conviction, or whether the jury might have reached a different result had the comments not been made. *Lasley*, 158 Ill. App. 3d at 625-26.

■ In the instant action, defendants assert that the State improperly blended the evidence of the charged crime and the uncharged crime so as to "paint" defendants as bad men. Defendants identify several remarks as improper and prejudicial. First, defendants assert that the State improperly argued that it had "four eyewitnesses" in the case before the jury, when it in fact had only two eyewitnesses, the other witnesses having offered evidence as to the uncharged crime. We agree with defendants that the State's reference was clearly incorrect and therefore improper. However, in the context of the entire argument, we cannot say that this error was so prejudicial as to have deprived defendants of a fair trial. A complete reading of the State's closing argument reveals numerous references to the separateness of the two crimes and the limited purpose for which evidence of the uncharged crime was introduced. In light of the entire argument, we cannot conclude that the prosecutor's misstatement constituted a material factor in the verdict of the jury.

A more serious question is presented by the second complained-of reference, namely, that defendants were "professionals." It is reversible error for a prosecutor to refer to a defendant as a habitual or professional criminal, or to suggest that the defendant's business or occupation is crime. (*People v. Natoli* (1979), 70 Ill. App. 3d 131, 136; see *People v. Mathes* (1981), 101 Ill. App. 3d 205, 207.) Characterizing a defendant as a professional criminal or otherwise stating that the defendant's occupation is crime is prejudicial in that it implies that the defendant has a propensity to commit crime. See *Natoli*, 70 Ill. App. 3d at 136-37.

Defendants rely extensively on *Natoli* in support of their argument that they were denied a fair trial by the State's argument characterizing them as "professionals." In *Natoli*, the prosecutor made repeated references characterizing the defendant's "business" as selling drugs. (70 Ill. App. 3d at 136.) The court found these references particularly egregious since they diluted the defendant's credibility and therefore improperly diverted the jury from considering the defendant's entrapment defense on the evidence. (70 Ill. App. 3d at 136.) However, in *People v. Mathes* (1981), 101 Ill. App. 3d 205, 207, the court affirmed the defendant's conviction of armed robbery despite

his argument that he was denied a fair trial by the prosecutor asking the jury to end the defendant's "career" as an armed robber. The court noted that this reference, although improper, did not constitute reversible error under the totality of the facts and circumstances of the case and the overwhelming evidence of the defendant's guilt. (*Mathes*, 101 Ill. App. 3d at 207.) Similarly, in *People v. Richardson* (1985), 139 Ill. App. 3d 598, this court affirmed the defendant's conviction of murder despite his argument that he was denied a fair trial by the prosecutor characterizing him as "sophisticated." In so ruling, we noted that "the context in which the prosecutor used the word 'sophisticated,' *** may or may not have been understood to refer to 'criminal sophistication.' " *Richardson*, 139 Ill. App. 3d at 601.

We believe that the reference in the instant action is similar to that found in *Mathes* and *Richardson*. During the State's rebuttal argument, the assistant State's Attorney stated:

> "These guys are professionals, ladies and gentlemen, they know what to do, they know what not to do, they know how not to leave fingerprints, how not to leave evidence around to get caught with it later.
>
> * * *
>
> And your verdict must tell these men that they can't escape the responsibility for their actions and that this is the end, this is the end of the line, this is where it stops, there is [*sic*] no more victims, no more shoe stores, no more nighttime robberies."

Read in the context of the entire argument, we do not believe that these references implied that defendants had a criminal history or a propensity to commit crime. The State's characterization of defendants as "professionals" did not label them as "professional criminals" and may be fairly interpreted as proper commentary on the *manner* in which defendants committed the instant offense, particularly given their use of rubber gloves and handcuffs. (See *Richardson*, 139 Ill. App. 3d at 601.) Similarly, the reference to "shoe stores" and "nighttime robberies" may be fairly interpreted as referring only to the instant crime, particularly given the context in which those remarks were made where the State was asking the jury to return a verdict to stop defendants from committing any more crimes similar to the one charged. (See *Mathes*, 101 Ill. App. 3d at 207.) Based on the foregoing, we do not believe that the evidence was so closely balanced that defendants were prejudiced by the State's closing argument.

Turning to the remaining points raised in Jerry's appeal, Jerry

next contends that the State failed to prove him guilty beyond a reasonable doubt on the basis that the identification testimony was insufficient. We disagree.

The State has the burden of proving the identity of the person who committed the crime beyond a reasonable doubt. (*People v. Slim* (1989), 127 Ill. 2d 302, 307.) An identification will not be deemed sufficient to support a conviction if it is vague or doubtful. (*Slim*, 127 Ill. 2d at 307.) The factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification confrontation; and (5) the length of time between the crime and identification confrontation. (See *Slim*, 127 Ill. 2d at 307-08; *People v. McTush* (1980), 81 Ill. 2d 513, 521.) Any discrepancies and omissions as to facial and other physical characteristics are not fatal, but simply affect the weight to be given the identification testimony. (*Slim*, 127 Ill. 2d at 308.) The presence of discrepancies or omissions in a witness' description of the accused do not in and of themselves create a reasonable doubt as long as a positive identification has been made. *Slim*, 127 Ill. 2d at 309.

In the instant action, both Engeldinger and Leavitt positively identified Jerry McCall as the older perpetrator on several occasions. In addition, one of the two witnesses called to testify regarding the uncharged offense positively identified Jerry McCall as the older perpetrator in that crime on more than one occasion. Jerry makes much of the fact that these witnesses initially described him as having dark or brown hair and brown eyes at the time of the offenses, when he in fact had green eyes and gray or graying hair. These discrepancies go only to the weight of the witnesses' testimony and do not render the identification insufficient as a matter of law. Nor do we consider the witnesses' testimony that Jerry did not have a cast on his left arm or a beard at the time of the offense sufficient to negate their identifications. Dr. Bartucci's testimony that he "thought" Jerry had a beard when he saw him on December 20, 1986, was inconclusive, and the jury certainly could have inferred that Jerry shaved before the robbery. Dr. Bartucci also testified that Jerry could have removed his cast and further noted that Jerry's wrist was more tender and painful than would otherwise be normal. Thus, the inconsistencies relied upon by Jerry in challenging the identification testimony were explained or otherwise accounted for during the course of the trial. Finally, we note that the witnesses had ample opportunity to observe and identify

the older perpetrator. Engeldinger was initially approached by the older perpetrator at the time the robbery was announced, and the older perpetrator handcuffed her to the metal rack in the stock room before he left. Leavitt was left alone in the stock room with the older perpetrator for approximately four minutes. Based on this record, we cannot conclude that the few inconsistencies presented render the identification testimony insufficient as a matter of law.

■■ Jerry next presents four arguments challenging the constitutionality of the Habitual Criminal Act (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*) pursuant to which he received a natural-life sentence. Jerry contends that the Act is unconstitutional in that it (1) was enacted in violation of article IV, section 8(d), of the Illinois Constitution because it was not read three times in the House of Representatives; (2) does not permit consideration of the offender's personal characteristics and seriousness of the offense in violation of the due process clause and eighth amendment of the United States Constitution; (3) places the sentencing discretion in the State's Attorney rather than the judiciary in violation of the separation of powers doctrine of the Illinois Constitution and eighth amendment to the United States Constitution; and (4) violates the provisions of the Illinois and United States Constitutions prohibiting *ex post facto* laws and double jeopardy. Each of these arguments has been addressed and rejected in numerous appellate court decisions. (See *People v. Sims* (1987), 166 Ill. App. 3d 289, 302-03 (compilation of cases upholding the constitutionality of the Act).) As Jerry concedes in his brief on appeal, this court has recently adopted these holdings and rejected the identical four challenges presented here. (See *People v. McDarrah* (1988), 175 Ill. App. 3d 284, 297-98; *People v. Westefer* (1988), 169 Ill. App. 3d 59, 64-65.) Jerry does not raise any new theories nor present compelling arguments for this court to retreat from *McDarrah*, *Westefer*, or the numerous other decisions finding the Act constitutional. Accordingly, we find Jerry's constitutional challenges to the Act to be without merit.

For all of the reasons set forth above, we affirm the judgments of the circuit court of Du Page County.

Affirmed.

REINHARD and McLAREN, JJ., concur.