**John Richard BARELA,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 89–45.**

Supreme Court of Wyoming.

Feb. 13, 1990.

Steven E. Weerts, Sr. Asst. Public Defender, Mike Cornia, Asst. Public Defender, and Donald K. Slaughter, Student Intern (argued), for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Michael K. Kelly, Asst. Atty. Gen. (argued), for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant John Richard Barela was convicted of first degree sexual assault after a

jury trial and sentenced to a term of 14 to 19 years. He raises the following issues:

"1. Whether the prosecutor's remarks during closing argument adversely affected the defendant's substantial right to a fair trial.

"2. Whether the trial court judge erred in his use of generalizations in denying Appellant probation."

We affirm.

### FACTS

The victim of the sexual assault came home from work about midnight, lay down in her bed, and went to sleep. She was awakened by appellant pushing her down into the bed. Fearful, she struggled and tried to get away, but was unable to prevent appellant from having sexual intercourse with her. Appellant admitted the sexual intercourse but contended that it was consensual. He testified that he had gone to the victim's home at approximately 3:30 a.m. and that she had let him in, led him to her bedroom, and consented to have sex with him.

### DISCUSSION

■ Appellant first argues that comments made by the prosecutor during his opening and closing arguments denied him a fair trial. No objection was made to these comments at trial. We therefore apply the plain error standard of review in this appeal. *Wheeler v. State,* 691 P.2d 599 (Wyo.1984). To invoke the plain error doctrine, appellant must demonstrate that a clear and unequivocal rule of law has been violated, that he was denied a substantial right, and as a result has been materially prejudiced. *Miller v. State,* 784 P.2d 209 (Wyo.1989); *Larsen v. State,* 686 P.2d 583, 584 (Wyo.1984).

A review of our cases on the subject demonstrates the difficulty of determining what constitutes impermissible prosecutorial behavior. The question of the propriety of a given statement is not one that can be decided by reference to a judicial checklist of improper words or prohibited phrases to determine if error is present. Of necessity, each statement must be considered in the context in which it was made and in the context of the evidence produced at trial. *Freeze v. State,* 662 P.2d 415 (Wyo.1983). To invoke the plain error doctrine, it must first be established that a clear and unequivocal rule of law was violated. Therefore, we must identify the limits of permissible argument to determine if the prosecutor crossed the line.

In an often quoted opinion, the United States Supreme Court stated that a prosecutor should prosecute with earnestness and vigor but "while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Determining the location of the line between fair and foul requires reference to the underlying reasons for limiting argument of counsel.

The purpose of limiting the argument of counsel is, fundamentally, to preserve the prerogatives of the jury. Cases involving the propriety of argument are analyzed in terms of protecting the jury from deciding the facts on a basis other than the evidence produced at trial. This analysis is seen in cases where the prosecutor alludes to information that he claims to possess but which has not been presented as evidence. *See, e.g., Berger,* 295 U.S. at 86–89, 55 S.Ct. at 633. The perceived risk is that the jury will consider the statements made by the prosecutor as evidence, subverting the controls that the law places on admission of evidence. When a prosecutor misstates the law concerning the burden of proof, the risk is that the jury will determine the facts with reference to the incorrect law. *Stephens v. State,* 774 P.2d 60 (Wyo.1989). A similar example is when a prosecutor asserts that his credibility is superior to that of a witness and that the jury is to choose between the prosecutor's credibility and that of a witness. *Browder v. State,* 639 P.2d 889 (Wyo.1982).

When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opin-

ion: that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law. *See Hopkinson v. State*, 632 P.2d 79, 166 (Wyo.1981).

The trial court is in the best position to consider the propriety of argument that falls into the gray area between the permissible and the prohibited. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1984). In the context of a particular trial, a statement may be objectionable even if the identical statement would be permitted in a different trial. These questions are best left to the discretion of the trial court. *Jeschke v. State*, 642 P.2d 1298 (Wyo.1982). For the purpose of review under the plain error standard, the limit on argument by the prosecutor is exceeded if the prosecutor's argument states or implies that the jury should consider factors other than the evidence presented in determining the facts.

Appellant bases part of his claim of plain error on the following statements made by the prosecutor:

"When all else fails, when there is no other defense, you use consent; but there was none in this case."

"Again, and again, and again we're going to be asking the question, who was telling the truth? People can lie in Court and people do lie in Court * * *."

"Who do you believe in this particular situation? Do you believe the Plaintiff or the victim in this particular matter?"

"You saw Mr. Taylor and Mr. Gonzales, and you know what they testified to, and you know who's telling the truth. If you lie long enough, and you lie, and you keep up with this story, and I contend that this is a story that Mr. Barela made up, you will lie * * *."

"He lied throughout this, the court proceeding, and he has a real motive to lie * * *."

Appellant contends that these statements constitute an attack on his credibility and were statements of the prosecutor's personal belief as to the truth or falsity of the evidence presented. He argues that these statements were so egregiously prejudicial that they deprived him of a fair trial.

When these statements are read in the context of the complete argument, it is apparent that the prosecutor was not attempting to induce the jury to base their factual determination on his beliefs or opinions. Rather, he was articulating the State's position upon inferences to be drawn from the evidence. It was argument pure and simple. The prosecutor was careful to make it clear that the decision was in the hands of the jury. As to the statement that defendant was lying, when there is express contradictory testimony, as there was here, the inference that at least one of the witnesses is lying is a reasonable one. *Wheeler*, 691 P.2d at 604–5. We have previously considered the effect of a similar statement in *Barnes v. State*, 642 P.2d 1263, 1265 (Wyo.1982), where we said that "calling a defendant a thief and a liar may not be in good taste," but when the evidence supports a reasonable inference that such is in fact the case, it does not constitute reversible error to argue the question. *Id.* at 1266.

Appellant also argues that the prosecutor compared him to Ted Bundy and that the reference so inflamed the passions of the jury that he was denied a fair trial. The statement in question was made on rebuttal:

"A few years ago I met a lawyer representing a very famous rapist, who happened to be good looking, and he walked over to his client, stood behind him and said 'Does Ted Bundy look like a rapist?' I'm a little bit angered at some of the comments that were made, and I'm not going to get emotional, and just go for the facts of this particular case."

It appears that this comment was made in response to the argument made by appellant's counsel during his closing:

"He's good looking. Now, obviously, ladies and gentlemen, the prosecutor can argue and will argue that good-looking people commit rapes too, but you take a person that's known in this community, good looking as he is, obviously he could have many, many women if he wanted to. Is this a type of guy who commit [sic] a rape? Does he look like that type of guy?"

Closing arguments should not be designed to inflame the passion and prejudice of the jury. *Jeschke*, 642 P.2d at 1302. It seems clear enough in this case, however, that the remark was in response to defense counsel's statement that the prosecutor would argue that good looking people do commit rapes. It was not an argument designed to inflame the jury. While reference to a notorious criminal in an attempt to inflame the passion of the jury is improper, *Meggett v. State*, 599 P.2d 1110 (Okla.Crim.App.1979), under the circumstances here, the comment was not so prejudicial as to affect appellant's right to a fair trial. The prosecutor made only the single reference to Bundy, and no attempt to play on the notoriety of that case is shown by the record. Therefore, we find the comment not to be plain error.

■ In appellant's second argument, he contends that the trial court improperly used "generalizations" when placing upon the record its reasons for denying probation. At sentencing, the trial court specifically indicated that it had considered the information in the presentence investigation report, appellant's possible psychologi-

cal problems, appellant's inability to control his behavior at times, the seriousness of the specific offense, the violence exhibited in this particular case, the effect of the crime upon the victim, the need for societal deterrence, and the need for individual deterrence based on previous problems that appellant had with abusive behavior towards women. The trial court properly considered probation as an alternative. *Cook v. State*, 710 P.2d 824 (Wyo.1985). We do not agree with appellant's characterization of the court's decision as "capricious."

The judgment and sentence is affirmed.

URBIGKIT, Justice, specially concurring.

I specially concur by agreement that plain error was not presented in statements made in prosecutorial argument.

I write additionally to emphasize that counsel, not the judge, has first responsibility for deterrence of improper conduct of opposing counsel. It is the duty of the trial court to facilitate the orderly progress of the trial while maintaining the appearance of strict impartiality. *United States v. Davis*, 752 F.2d 963, 975 (5th Cir.1985). If objection is made, correction is immediately and more easily accomplished. *Lindsey v. State*, 725 P.2d 649 (Wyo.1986); *Bennett v. State*, 377 P.2d 634 (Wyo.1963). In the absence of acuity of counsel shown by objection, the concept of plain error under W.R.Cr.P. 49(b) (identical to F.R.Cr.P. 52(b)) is difficult to establish for reversal on appeal.[1] *Goodman v. State*, 601 P.2d

---

1. In sheer number, ineffectiveness of defense counsel and prosecutorial overreaching in argument and examination are large among the more numerous issues presented for criminal case appellate review. Failure of defense counsel to object to what the prosecutor may be doing encompasses a significant part of both arguments. The failure to object to improper argument which converts the misconduct consideration into an examination of waiver or plain error has an extensive recent Wyoming history. *Tennant v. State*, 786 P.2d 339 (Wyo. 1990); *McLaughlin v. State*, 780 P.2d 964 (Wyo. 1989); *King v. State*, 780 P.2d 943 (Wyo.1989); *Coleman v. State*, 741 P.2d 99 (Wyo.1987); *Lindsey*, 725 P.2d 649; *Story v. State*, 721 P.2d 1020 (Wyo.1986); *MacLaird v. State*, 718 P.2d 41

(Wyo.1986); *Wheeler v. State*, 691 P.2d 599 (Wyo.1984); *Jeschke v. State*, 642 P.2d 1298 (Wyo.1982); *Barnes v. State*, 642 P.2d 1263 (Wyo.1982); *Jones v. State*, 580 P.2d 1150 (Wyo. 1978); *Bennett*, 377 P.2d 634; *Cavaness v. State*, 358 P.2d 355 (Wyo.1961).

Somewhat differently emplaced is the direct constitutional inquiry required when comment by the prosecutor is made in some fashion regarding the election of the defendant not to testify. Wyoming progressed to the per se *Westmark v. State*, 693 P.2d 220 (Wyo.1984) rule when nothing else seemed to work. *Richter v. State*, 642 P.2d 1269 (Wyo.1982); *Parkhurst v. State*, 628 P.2d 1369 (Wyo.), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981); *Clenin v. State*, 573 P.2d 844 (Wyo.1978); *Jers-*

178 (Wyo.1979). *See Horn v. State*, 12 Wyo. 80, 73 P. 705 (1903). In times past, including when this writer started practice, the discipline of trial practice rejected opposing counsel objections during opening and closing arguments unless the statements or conduct were absolutely egregious. That gentleman and lady-like attribute will no longer suffice for proper legal representation. It is not suitable to expect the trial judge to not only act as the unbiased supervisor, but also the super-attenuated advocate for each litigant to access and determine "plain error" in argument and examination.[2] Procedurally and more determinatively, assessment of hesitancy to ask the presiding judge to do what counsel has neglected to do denies trial time opportunity to correct improprieties of counsel behavior when correction is easier, faster and less expensive. Decision is immediately obtained by objection at trial instead of cultivated to flower into a future appeal. *Browder v. State*, 639 P.2d 889 (Wyo.1982).

A random selection of recent national cases should highlight the need for proper assertion of defense counsel responsibility by objecting to claimed improprieties by the prosecuting attorney. *See Leonard v. State*, 551 So.2d 1143 (Ala.Cr.App.1989), inadequate objection to preserve error alleged in final objection about production of tangible items as possible evidence and *Minnick v. State*, 551 So.2d 77 (Miss.1988), contended improper argument, both in guilt and penalty phase, to be either waived or not considered to be prejudicial. Failure to object to statements in closing argument was determinative in *People v. McCall*, 190 Ill.App.3d 483, 137 Ill.Dec. 438, 546 N.E.2d 62, 68 (1989), although the court reflected that "statements made in closing argument which serve no purpose except to inflame the jury constitute error." *See likewise*

*State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989); and *State v. Cooey*, 46 Ohio St.3d 20, 544 N.E.2d 895, *reh'g denied* 46 Ohio St.3d 717, 546 N.E.2d 1335 (1989). In *Artis*, 384 S.E.2d at 496, the appellate court perceived the responsibility of counsel for defendant:

"Counsel for each side may argue to the jury the fact in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his or her side of the case." *[State v.] Huffstetler*, 312 N.C. [92] at 112, 322 S.E.2d [110] at 123 [1984]. Whether an advocate has abused this privilege is left largely to the sound discretion of the trial court. *Id.* Where the defendant has failed to object to an alleged impropriety in the state's argument and so flag the error for the trial court, an appellate court may review the argument notwithstanding. But "the impropriety ... must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

Failure of counsel for defendant to object raises the second appellate issue of ineffectiveness of counsel. See, for example, where harmless error was found in *Schlup v. State*, 771 S.W.2d 895 (Mo.App.1989), when the court did find ineffectiveness from other appellate representative omissions in the case when provided by appointed counsel. *See also United States v. Kornegay*, 885 F.2d 713 (10th Cir.1989).

The assessment of responsibility for trial counsel was recognized by the United States Supreme Court as is frequently the

---

key *v. State*, 546 P.2d 173 (Wyo.1976); *Gabrielson v. State*, 510 P.2d 534 (Wyo.1973). *Cf. Summers v. State*, 725 P.2d 1033 (1986), *opinion confirmed* 731 P.2d 558 (Wyo.1987).

**2.** However, nothing is easy. *See United States v. Wallace*, 889 F.2d 580, 584 (5th Cir.1989), where the decision recites:

As to his conviction Wallace finally argues that he was denied a fair trial because the

trial court admonished his attorney not to make unnecessary objections during the government's closing argument. The argument is devoid of merit.

It is nearly axiomatic that what the trial court might prefer may not necessarily be what the appellate process requires.

case where an appellate court decision to confirm the conviction is made. *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618, *reh'g denied* 483 U.S. 1056, 108 S.Ct. 30, 97 L.Ed.2d 819 (1987). It is stated in *People v. Bell*, 49 Cal.3d 502, 262 Cal.Rptr. 1, 778 P.2d 129, 147 (1989):

We observe initially that defendant failed to object to some of the statements and argument he now claims as prejudicial misconduct. Because " 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect [of misconduct] upon the minds of the jury' " (*People v. Green* (1980) 27 Cal.3d 1, 27, 164 Cal.Rptr. 1, 609 P.2d 468), a defendant will be deemed to have waived the objection if he fails to raise the matter at trial. "[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected ...; if it would not, the court must then and only then reach the issue whether on the whole record the harm resulted in a miscarriage of justice within the meaning of the Constitution." (Id. at p. 34, 164 Cal.Rptr. 1, 609 P.2d 468. * * *.)

Conversely, with similar responsibility, it is also considered that the prosecuting attorney occupies a quasi-judicial responsibility in the criminal trial. *State v. Wilson*, 32 Wyo. 37, 57, 228 P. 803 (1924); *State v. England*, 376 S.E.2d 548 (W.Va.1988); Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure*, 135 U.Pa.L. Rev. 1365 (1987).[3]

Often stated, the question for resolution is not the culpability of the prosecutor, but rather the fairness of the trial. *Kornegay*, 885 F.2d at 719. Similarly, this court said in *Goodman*, 601 P.2d at 188 (emphasis in original):

Moreover, reversal and remand for a new trial because of prosecutorial misconduct will not be ordered as punishment for a prosecutor's misdeeds but only because such misdeeds deny a *fair trial*.

There comes a time, however, if the misconduct is sufficiently severe, damage control by objection and special instruction may not suffice to avoid mistrial or reversal. *Browder*, 639 P.2d 889; *United States v. Murrah*, 888 F.2d 24 (5th Cir. 1989).

Within the ambient of the veritable forest of appellate cases considering ineffectiveness of defense counsel—prosecutorial misconduct, either or both—harmless and no plain error or lack of prejudice is frequently applied to judicially authenticate affirming the conviction. *See State v. Deboue*, 552 So.2d 355 (La.1989). *Cf. United States v. Goff*, 847 F.2d 149 (5th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988). See also the plain error discussion in *People in the Interest of R.R.*, 447 N.W.2d 922 (S.D.1989).

Unfortunately, it is not easy to differentiate what is unprofessional in conduct of the prosecuting attorney from what is unconstitutional or unduly prejudicial in result. All are wrong. This court's recent case of *Tennant v. State*, 786 P.2d 339 (Wyo.1990) provides an example. We found the conduct to be unprofessional. In the face of obvious guilt, we found the conduct not to be reversible error when no

3. The author introduces his 112 page article:
Few officials can so affect the lives of others as can prosecutors. Yet few operate in a vacuum so devoid of externally enforceable constraints. Indeed, contemporary efforts to constrain the discretion of actors in the criminal justice system have not only bypassed the prosecutor, they have tended to expand her power by squeezing the system's seemingly insoluble bubble of discretion her .way.
The courts are the most important, and in many instances the only, check on prosecutorial misbehavior; and the Constitution is a

major source of judicial authority over prosecutorial practices. Surprisingly, however, the there has been virtually no systematic examination of the manner in which courts enforce the constitutional proscriptions that circumscribe the prosecutor's considerable power. Instead, courts and commentators have tended to view various prosecutorial abuses as discrete problems to be analyzed and resolved on an atomistic basis.
+ Reiss, *supra*, 135 U.Pa.L.Rev. at 1365–66 (footnotes omitted).

objection was made. The validity of the question in many cases cannot be denied. If there is obvious guilt, why should excesses in oral argument be attempted? Compare *Schmunk v. State*, 714 P.2d 724 (Wyo.1986) and *Browder*, 639 P.2d 889 with *Coleman v. State*, 741 P.2d 99 (Wyo.1987) and *Lindsey*, 725 P.2d 649.

In Wyoming historical perspective, the moralistic concept was recited from 22 R.C.L. 104:

> "The prosecuting attorney, in a criminal case, represents the people, and having no responsibility, except fairly to discharge his duty, should put himself under proper restraint, and should not, in his remarks before the jury go beyond the evidence or the bounds of a reasonable moderation. If he lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases properly to represent the public interest. * * * If a conviction in a criminal case follows an improper and dangerous appeal to the prejudice of the jurors, made by the prosecuting attorney, and it is reasonably certain that his course brought about such result, the judgment will be reversed for such error whenever it is raised by a proper exception."

*Wilson*, 32 Wyo. at 57, 228 P. at 809. The distance between censure, *State v. Sorenson*, 34 Wyo. 84, 241 P. 705 (1925), and reversal, *State v. Thomas*, 38 Wyo. 72, 264 P. 1017 (1928); *Rosencrance v. State*, 33 Wyo. 360, 239 P. 952 (1925), was even at that earlier time not so easy to measure.

Undoubtedly, the boundary line from proper practice or harmless error into prejudice and plain error can be difficult to discern and unexpectedly crossed. *Goff*, 847 F.2d 149. Courts have engaged in hand-wringing, but some have agreed with the author in Reiss, *supra*, 135 U.Pa.L. Rev. 1365, that action is required and perhaps fairness mandates and enforcement of the message demands reversal in more cases. *See United States v. McBride*, 862 F.2d 1316 (8th Cir.1988), final argument reference to dismissed counts; *United States v. DiLoreto*, 888 F.2d 996 (3rd Cir. 1989), closing rebuttal argument "we don't put liars on the stand"; *Dean v. Com.*, 777 S.W.2d 900 (Ky.1989); *Caldwell* error, *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in final argument; *State v. Belgarde*, 110 Wash.2d 504, 755 P.2d 174 (1988), argument about conduct of defendant at arrest; *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir.1989), penalty phase argument in death case; *Murrah*, 888 F.2d 24, argument referenced to non-introduced evidence and attack on defendant and his counsel; *State v. Keenan*, 779 S.W.2d 743 (Mo.App.1989), error in denied mistrial after municipal ordinance violation was brought before the jury for improper purposes; *People v. Threadgill*, 166 Ill.App.3d 643, 117 Ill.Dec. 96, 520 N.E.2d 86 (1988), support law enforcement in the community as an argument; *Com. v. Gallego*, 27 Mass.App. 714, 542 N.E.2d 323 (1989), comment about public anxiety concerning the drug problem; and *Duggan v. State*, 778 S.W.2d 465, 468 (Tex.Cr.App. 1989), the "duty to correct known false evidence is not only a prosecutorial ethic, but a constitutional requirement."

These cases, which are not necessarily representative of current appeals, demonstrate a growing judicial impatience with warning as the only corrective action.[4] All participants in the trial have a contributory responsibility for the essential fairness of the process. Proper trial objection made immediately and incisively serves in first responsibility to deter inappropriate conduct and short circuit subsequent issues on

---

4. The failure of appellate court warnings and no prejudice exculpation of improper conduct is illustrated by *Lindsey*, 725 P.2d 649, Urbigkit dissenting. In the absence of reversal, the answer for defense counsel in criminal cases may be ingrained in proper trial procedure to automatically first object and then immediately approach the bench and move for a mistrial. Perhaps the answer for this court is to say what was done was either constitutionally, ethically or professionally acceptable, i.e., *McLaughlin*, 780 P.2d 964, and, if not, to do more than apply harmless error, plain error and no prejudice absolutions. *See* ABA Monogram, *The Judicial Role in Identifying and Referring Prosecutorial Misconduct* (1989).

appeal. Irrelevance and prejudice should not be exploited by any litigant in final argument. *Com. v. Hoppin,* 387 Mass. 25, 438 N.E.2d 820 (1982). *See Schmunk,* 714 P.2d 724 and *Browder,* 639 P.2d 889.

In this case, I concur because counsel for defendant did not object and not necessarily because a *Bundy* argument is justifiable, appropriate or even acceptable.