THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIAN LACH, Defendant-Appellant.

First District (4th Division)    No. 1—97—0290

Opinion filed December 24, 1998.

Rita A. Fry, Public Defender, of Chicago (Carol J. Milder, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Following a bench trial, defendant was convicted of driving under the influence of alcohol (DUI), driving on a suspended license and damage to city property. He was sentenced to serve seven days in the Cook County Department of Corrections, two years' conditional discharge and six months' electronic home monitoring.

On appeal, defendant raises three issues: (1) whether this case should be reversed and remanded for a new trial where there was no understanding jury waiver in open court; (2) whether the trial court erred when it admitted the results of the blood-alcohol test without establishing a chain of custody; and (3) whether the State failed to prove him guilty of driving under the influence of alcohol beyond a reasonable doubt.

Defendant contends the evidence was insufficient to prove him guilty beyond a reasonable doubt; therefore, a recitation of the facts is necessary.

Mark Menke, a Chicago fire department paramedic, testified that

on December 8, 1995, while in his ambulance, he observed a vehicle strike a light pole. He identified defendant as the driver of that car. His observations of defendant were that he was combative, disoriented, had alcohol on his breath, spoke with slightly slurred speech and staggered. Based upon his experience in observing thousands of people who were inebriated, it was his opinion defendant was under the influence of alcohol.

Officer Riley, the reporting officer at the scene, did not observe the accident, but he identified defendant as being in a Chicago fire department ambulance with paramedics working on him at the time of his arrival. His investigation revealed that defendant was the owner and operator of the car involved in the accident. He testified defendant's face was flushed, his eyes were bloodshot, he was confused and had a strong odor of an alcoholic beverage on his breath. Based upon his personal and professional experience in observing hundreds of people who were inebriated, it was his opinion defendant was under the influence of alcohol.

Officer David Ryan investigated this accident on the date in question and observed defendant, whom he identified in open court, while he was in the ambulance. He testified defendant's face was "blushed" and that he had a strong odor of alcohol on his breath. After defendant was transported to the hospital, the officer spoke with him and observed his eyes were bloodshot, his face was flushed and he had a strong odor of an alcoholic beverage on his breath. He also appeared to be confused and angry. Subsequent investigation revealed defendant's driver's license was revoked at the time of the accident. Defendant was arrested and issued citations.

Defendant was transported to Mt. Sinai Hospital, where he was initially treated by Michael Panagon, a staff nurse, who testified blood was drawn from defendant upon orders of the attending emergency room physician, which is standard protocol for trauma patients at that hospital. The blood was sent to the hospital lab, and the results indicated defendant's alcohol level was at 313 milligrams per deciliter. He identified defendant in open court as the individual he treated that evening.

Defendant, who testified through a Polish interpreter, stated that on December 8, 1995, he had been loading trucks from 8 a.m. to 3 p.m., after which time he went home to his apartment, which was being painted at that time by Kazimierz Soltyz. He then left his home at approximately 5:30 p.m. and went to a treatment center to meet with his substance abuse counselor. He arrived at the center at approximately five minutes to 6 p.m. and departed at 8:30 p.m. It was 9:20 p.m. when he arrived home, and at no time was he involved in a car accident and taken to a hospital.

Kazimierz Soltyz testified he painted defendant's apartment on December 8, 1995, and dropped him off at the treatment center sometime after 6 p.m.

Visia Fahbrgr, a substance abuse counselor, testified defendant attended a counseling session with her on December 8, 1995, from 6 p.m. to 9 p.m.

At the close of all the evidence, defendant was convicted.

For reasons set forth later in this opinion, we remand the case for a new trial.

We first address defendant's proof-beyond-a-reasonable-doubt contention to protect his constitutional right against double jeopardy (*People v. Champs*, 273 Ill. App. 3d 502, 511, 652 N.E.2d 1184 (1995)). He argues the State failed to disprove his alibi beyond a reasonable doubt and that, even assuming he was at the scene of the accident, it was not proven he was under the influence of alcohol.

■ When presented with a challenge to the sufficiency of the evidence, a reviewing court, after viewing the evidence in a light most favorable to the State, must determine whether any rational trier of fact could find the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Wittenmyer*, 151 Ill. 2d 175, 601 N.E.2d 735 (1992); *People v. Wrobel*, 266 Ill. App. 3d 761, 641 N.E.2d 16 (1994). The reviewing court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight of evidence and the credibility of witnesses. *People v. Campbell*, 146 Ill. 2d 363, 586 N.E.2d 1261 (1992). Accordingly, we will not reverse unless the evidence presented at trial is so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Campbell*, 146 Ill. 2d at 375.

■ Based upon the evidence in the record, any rational trier of fact could find the State proved the essential elements of driving while under the influence of alcohol, driving on a suspended driver's license and damage to city property beyond a reasonable doubt. Our determination, however, is not a "finding as to defendant's guilt or innocence that will be binding in a new trial." *Champs*, 273 Ill. App. 3d at 511.

Defendant next argues he was denied his constitutional right to a trial by jury because there was no understanding jury waiver in open court.

The case proceeded to trial on June 14, 1996. Contained in the record is a jury waiver signed by defendant on that date. There was, however, no discussion with defendant about this waiver, and no admonishments were given regarding his understanding of the waiver or the consequences of giving up his right to a trial by jury.

■ Defendant did not object to proceeding to trial without a jury and did not raise the issue in his written motion for a new trial.

Both an objection at trial and a written posttrial motion are required to preserve an issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988).

This court may, however, review plain errors affecting substantial rights under Supreme Court. Rule 615(a) (134 Ill. 2d R. 615(a)) even if those errors were not brought to the attention of the trial court. Therefore, this court has consistently elected to review claims of invalid jury waivers because a fundamental right is implicated. See *People v. Potts*, 277 Ill. App. 3d 567, 660 N.E.2d 560 (1996); *People v. Stokes*, 281 Ill. App. 3d 972, 667 N.E.2d 600 (1996); *People v. Jennings*, 268 Ill. App. 3d 439, 444, 644 N.E.2d 1199 (1994); *People v. Bristow*, 80 Ill. App. 3d 535, 538, 400 N.E.2d 511 (1980).

This court will review the validity of defendant's jury waiver due to the importance of the right to a trial by jury.

■ The accused in a criminal proceeding has a constitutional right to a jury trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13) unless he understandingly waives the right in open court. 725 ILCS 5/103—6 (West 1992). To be valid, this waiver must be in writing. 725 ILCS 5/115—1 (West 1992).

While it is preferred that the trial court advise defendant of his right to trial by jury before he waives this right in writing or in open court, that is not constitutionally required. *People v. Murrell*, 60 Ill. 2d 287, 291, 326 N.E.2d 762 (1975). The court is not required to explain to defendant the consequences of a jury waiver. *People v. Nelson*, 17 Ill. 2d 509, 511, 162 N.E.2d 390 (1959). There is no set formula to determine the validity of a jury waiver. *People v. Stokes*, 281 Ill. App. 3d 972 (1996); *People v. Sandham*, 276 Ill. App. 3d 86, 88, 657 N.E.2d 719 (1995); *People v. McGee*, 268 Ill. App. 3d 582, 585, 645 N.E.2d 329 (1994). Whether a jury waiver was knowingly and understandingly made depends on the facts and circumstances of each case. *People v. Frey*, 103 Ill. 2d 327, 332, 469 N.E.2d 195 (1984). However, a written jury waiver standing alone is not enough to demonstrate an understanding waiver of the right to a jury trial. *People v. Sebag*, 110 Ill. App. 3d 821, 828, 443 N.E.2d 25 (1982).

■ The record here is silent as to whether defendant, who did not speak English, was aware that proceeding to a bench trial meant foregoing a jury trial. The record demonstrates that although defendant signed a jury waiver and may have been present when it was tendered in open court, there is no evidence his waiver was knowing and understanding. The record demonstrates defendant was never personally advised of his right to a jury trial either by the court or by his attorney.

The language barrier present in this case makes the need to explain to defendant what right he is waiving even more compelling. The right to a jury trial is a substantial right, and based upon the facts and circumstances here, we find the court erred in proceeding with a bench trial without first personally addressing defendant on the record regarding his understanding of the jury waiver. Therefore, this case will be reversed and remanded for a new trial.

Inasmuch as we are reversing and remanding this case, we will address the other issue that may arise again upon retrial.

■ Defendant contends it was error for the court to admit the results of the blood-alcohol test at trial because no proper foundation was laid and the State failed to establish a chain of custody. Section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1996)) lays out the admissibility requirements for chemical tests of blood in DUI cases. The statute reads:

"(a) Notwithstanding any other provision of law, the results of blood tests performed for the purpose of determining the content of alcohol, other drug, or both, of any individual's blood conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code *** when each of the following criteria are met:

(1) the chemical tests performed upon an individual's blood were ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities;

(2) the chemical tests performed upon an individual's blood were performed by the laboratory routinely used by the hospital; and

(3) results of chemical tests performed upon an individual's blood are admissible into evidence regardless of the time that the records were prepared." 625 ILCS 5/11—501.4 (West 1996).

■ A ruling on the admission of evidence will not be disturbed on appeal in the absence of an abuse of discretion by the trial court and a showing of prejudice to defendant. *People v. Arbo*, 213 Ill. App. 3d 828, 833, 572 N.E.2d 417, 420 (1991). The purpose of introducing the evidence and establishing the chain of custody is to connect the object to defendant and the crime. *People v. Ofoma*, 242 Ill. App. 3d 697, 706, 610 N.E.2d 738 (1993); *People v. Maurice*, 31 Ill. 2d 456, 458, 202 N.E.2d 480, 481 (1964); *People v. Tribett*, 98 Ill. App. 3d 663, 673, 424 N.E.2d 688, 695 (1981). The purpose of the rule is to negate the possibility of tampering or substitution and, therefore, the rule is applicable to demonstrative and real evidence that is easily subject to tampering or substitution without detection. *People v. Rhodes*, 81 Ill. App. 3d 339, 347, 401 N.E.2d 237 (1980).

■ The chain of custody must be of sufficient completeness to render it improbable that the item has been tampered with, exchanged or contaminated. To establish a sufficient chain of custody, the State need not exclude every possibility of tampering. Rather, the State need only show that it took reasonably protective measures after the substance was seized, and that it was probable the evidence was not changed in any important respect or substituted. Unless defendant provides actual evidence of tampering or substitution, the State need only establish the stated probability, and any deficiencies go to the weight and not the admissibility of the evidence. *People v. Tsombanidis*, 235 Ill. App. 3d 823, 601 N.E.2d 1124 (1992); *People v. Hermann*, 180 Ill. App. 3d 939, 944, 536 N.E.2d 706, 709 (1988); *People v. Hofman*, 157 Ill. App. 3d 764, 775, 510 N.E.2d 1139, 1146 (1987).

■ The purpose of section 11—501.4 is to insure the reliability and integrity of the test results conducted on a person charged with driving under the influence. By complying with the statute, the State demonstrates that reasonably protective measures have been taken to ensure that the blood taken from defendant and tested in the hospital lab was not changed or substituted.

■ Applying these principles to the case at bar, we conclude that the State's compliance with the statute was sufficient to establish that reasonably protective measures were taken to ensure that the blood taken from defendant was not changed or substituted. Michael Panagon, the staff nurse on duty at Mt. Sinai Hospital, testified the chemical tests performed on defendant's blood were ordered in the regular course of providing emergency medical treatment and were performed by the laboratory routinely used by that hospital. Specifically, the attending trauma surgeon and the attending emergency room physician issued the order for the blood to be drawn, and the test was performed in the regular course of emergency treatment. The blood was sent to the hospital lab which normally does the blood tests for the hospital, and a report was immediately prepared by lab personnel, thus demonstrating the improbability of tampering or substitution.

We find that compliance with section 11—501.4 is sufficient in and of itself to establish the admissibility of blood tests, and additional chain of custody evidence is not required.

Based upon the foregoing, we reverse and remand this matter for a new trial.

Reversed and remanded.

McNAMARA and HOFFMAN, JJ., concur.