THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LIONEL EATON, Defendant-Appellant.

First District (1st Division)   No. 1—97—4223

Opinion filed August 23, 1999.

Michael J. Pelletier and Deborah J. Israel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

A jury convicted defendant, Lionel Eaton, of four counts of attempted first degree murder and four counts of aggravated discharge of a firearm in connection with the shootings of Officers Eldridge and Richards. The trial court merged all the counts into two counts of attempted first degree murder and sentenced defendant to two concurrent 20-year terms of imprisonment. On appeal, defendant argues: (1) the trial court erred by allowing the State to present excessive and irrelevant gang evidence; (2) the State committed a series of discovery violations that prejudiced the defense; (3) the State improperly commented on a polygraph examination during closing arguments; and (4) the trial court abused its discretion during sentencing. We reverse and remand for a new trial.

At trial, Officers James Eldridge and Warren Richards testified that at approximately 10:30 p.m. on May 22, 1994, they responded to a report of shots fired at the LeClair Courts housing project. As they neared LeClair Courts, the officers heard shotgun blasts, rifle fire, and automatic pistol fire. The officers notified the dispatcher and requested assistance.

Officers Eldridge and Richards drove into the housing complex. At 44th Place and LeClair, several persons on the street pointed in the direction of the gunshots and yelled that there was a gang fight. The officers proceeded to drive in the direction of the gunshots.

At 4908 West 44th Place, Officers Eldridge and Richards saw 8 to 10 men firing weapons. As the officers approached the scene, shots were fired at their car. The officers drove down a fire lane and took cover behind a building approximately 15 yards away. They exited their vehicle and saw the men run away.

Officers Eldridge and Richards ran into a courtyard. As they came around a corner, they saw a black man in his late teens or early twenties, approximately 5 feet 7 inches tall and weighing about 300 pounds, wearing blue jeans and a dark shirt. He was standing in a "combat position" with both hands on a gun pointed at the officers. Officer Eldridge and Officer Richards identified defendant as the man they saw in the courtyard.

Defendant fired at the officers. Officer Eldridge returned fire, and defendant ran away. As the officers chased after defendant, Officer Richards saw defendant turn around and point his gun at him. Officer

Richards yelled "police, drop it," and fired his weapon. Defendant stumbled, fell to the ground, and dropped his gun. The officers ran to defendant.

Officer Eldridge handcuffed defendant and asked him if he was shot. Defendant replied "no, [expletive]." Officer Richards recovered the gun that defendant dropped, a 9 millimeter semi-automatic handgun with the slide lock back, indicating that it was empty. Officer Eldridge radioed for more assistance, and a few minutes later, Officers Charmaine Kielbasa and Kenneth Thelan arrived.

Officer Kielbasa testified that, when they arrived on the scene, they saw defendant handcuffed and on the ground, with Officers Eldridge and Richards next to him. Officer Thelan performed a pat-down search of defendant, then he and Officer Kielbasa drove defendant to the police station. At the police station, Officer Thelan again searched defendant and found a fully loaded 9 millimeter clip with 20 rounds in his right back pocket.

Officer Robert Baikie, a forensic investigator assigned to the case, testified he did not perform a gunshot residue test on defendant. Officer Baikie explained that a gunshot residue test is usually performed when a question exists as to who fired the weapon. Officer Richards testified he did not ask that a gunshot residue test be performed because he saw defendant fire the gun.

For the defense, Leon Hemphill testified he was walking around LeClair Courts at approximately 10:30 p.m. on May 22, 1994, when he saw defendant drive up to 44th Place. Defendant exited his car and told Hemphill that his wife had just had a baby and that he was on his way to pick up his other son. While they were talking, they heard gunshots in the distance and saw a "bunch of guys" run past them. Hemphill and defendant dove toward the ground.

Hemphill testified that, a few seconds later, the police ran toward defendant and handcuffed him. About five minutes later, two more police officers arrived, pushed defendant into their car, and drove away. Hemphill testified he tried to explain to the police that defendant had not been part of the shootings, but the officers told him to shut up and go home. In rebuttal, Officer Richards testified that, after apprehending defendant, he did not see anyone near defendant on the ground, nor did he see any other person in the area until the other police officers arrived. Officer Richards testified that no one approached him at the scene and told him that defendant was not involved in the shootings.

Defendant testified that at approximately 3 p.m. on May 22, 1994, he visited his wife and their new baby in the hospital. He left the hospital around 9 p.m., stopped to get something to eat, then drove to

LeClair Courts to pick up his other son. Defendant saw Hemphill on 44th Place and stopped to talk to him. While they were talking, they heard gunshots in the distance. Eight men then ran past them. Defendant heard "real close" gunfire and he and Hemphill dove toward the ground.

Defendant testified two police officers came up to him, handcuffed his hands behind his back, and lifted him off the ground. A few minutes later, a police car drove up and one of the officers in that car searched him and then drove him to the police station. At the police station, defendant told the assistant State's Attorney that he did not have a gun or a clip and that he had not fired at any police officers. Defendant testified that he did not have a gun in his possession on May 22, 1994, and he denied shooting at the two police officers in question.

On cross-examination, defendant testified he did not know the men who had run past him on the night of the shootings, nor did he know that the area he had been standing on was the "turf" of the Gangster Disciples. Defendant denied that he was a member of the Gangster Disciples or that he had been involved in a gang fight on the night of the shootings. Defendant also denied ever wearing a black T-shirt with purple letters that said "Growth and Development." The prosecutor subsequently showed defendant a freeze-frame image of himself on videotape. Defendant testified that, in the videotape, he could be seen wearing a black and purple shirt emblazoned with the words "Growth and Development."

On rebuttal, Officer Brian Redrick testified he was familiar with the street gangs operating in LeClair Courts. Officer Redrick testified that the Conservative Vice Lords and Gangster Disciples were the two major gangs in that area. Officer Redrick explained that 44th Place was part of "the strip" and that the Gangster Disciples and Conservative Vice Lords were battling for control of that area. Officer Redrick testified he knew defendant to be a member of the Gangster Disciples in 1994.

The jury convicted defendant of four counts of attempted first degree murder and four counts of aggravated discharge of a firearm. The trial court merged the counts into two counts of attempted first degree murder and sentenced defendant to two concurrent 20-year terms of imprisonment. Defendant filed this timely appeal.

First, we address defendant's argument that he was denied a fair trial when the prosecutor stated during closing arguments, "But you know, [defendant] said he wasn't guilty. Why didn't they put him on a polygraph? If they would have just put him on a polygraph."

■ The results of a polygraph examination, in any manner and at

any stage of the defendant's trial, are inadmissible as proof of guilt or innocence. *People v. Montgomery*, 302 Ill. App. 3d 1, 11 (1998), citing *People v. Baynes*, 88 Ill. 2d 225, 240 (1981), and *People v. Taylor*, 101 Ill. 2d 377, 391-92 (1984). The rationale is that polygraphy is not sufficiently reliable, and the quasi-scientific nature of the test may lead a trier of fact to give the evidence undue weight. *People v. Jefferson*, 184 Ill. 2d 486, 493 (1998).

■ The State contends that the prosecutor's remarks were not error, since they did not explicitly reference the results of a polygraph examination. We disagree. In *People v. Eickhoff*, 129 Ill. App. 3d 99, 103 (1984), the appellate court held:

"Testimony that a defendant was offered a polygraph test, or that he refused one, interjects into the case inferences which bear directly on his guilt or innocence: either he failed the test—as the State presumably would not pursue charges against an innocent—or he refused to submit to testing in fear that his guilt would be shown. That which may not be accomplished directly by evidence of polygraph test *results* may not be accomplished indirectly by references to whether a defendant sought, declined, or was offered a polygraph test." (Emphasis in original.) *Eickhoff*, 129 Ill. App. 3d at 103.

Similarly, in the present case, the prosecutor informed the jury that defendant had not taken a polygraph examination, the inference being that defendant was afraid to take the test for fear his guilt would be shown. The prosecutor's comments were error.

The State contends that defense counsel invited the prosecutor's remarks by arguing that neither the police nor the assistant State's Attorney ordered a gunshot residue test or established any other "scientific evidence" of defendant's guilt. We disagree. The scientific evidence referenced by defense counsel, specifically, the gunshot residue test and fingerprint and firearms evidence, was reliable and admissible. Defense counsel's references to such evidence did not invite the prosecutor's remarks on unreliable, inadmissible polygraph evidence.

*People v. Beamon*, 213 Ill. App. 3d 410 (1991), cited by the State, is inapposite. In *Beamon*, defense counsel stated during closing argument that the prosecutor should explain why he treated defendant differently than the codefendant. *Beamon*, 213 Ill. App. 3d at 414. In rebuttal closing argument, the prosecutor answered that the different treatment resulted from codefendant's decision to take a polygraph examination. *Beamon*, 213 Ill. App. 3d at 415. The appellate court held that defense counsel's remarks were "broad enough" to justify the prosecutor's response. *Beamon*, 213 Ill. App. 3d at 415. By contrast, in the present case, defense counsel's references to admissible scientific

evidence were not broad enough to justify the prosecutor's statement regarding inadmissible polygraph evidence.

■ The State next contends that the trial court cured the prosecutor's error by sustaining defense counsel's objection to the polygraph reference and instructing the jury to disregard all comments not based on the evidence and to which objections were sustained. We disagree. In *People v. Lewis*, 269 Ill. App. 3d 523 (1995), a witness made reference to a polygraph examination taken by the victim. Although the trial court sustained an objection to that comment and instructed the jury to disregard, the appellate court held that the polygraph reference denied defendant a fair trial. *Lewis*, 269 Ill. App. 3d at 527. Accordingly, the court reversed and remanded for a new trial. *Lewis*, 269 Ill. App. 3d at 527. In so holding, the court noted the extensive conflict between the testimony of the victim and the statements of defendant. *Lewis*, 269 Ill. App. 3d at 527. The court found that the improper polygraph reference could have substantially enhanced the victim's credibility in the eyes of the jury. *Lewis*, 269 Ill. App. 3d at 527. Similarly, in the present case, the prosecutor's reference to defendant's failure to take a polygraph examination denied him a fair trial. There was extensive conflict between the testimony of defendant, his friend Leon Hemphill, and Officers Eldridge and Richards. The improper polygraph reference could have substantially damaged defendant's credibility in the eyes of the jury. Accordingly, as in *Lewis*, the trial court's action in sustaining the objection and instructing the jury to disregard was not sufficient to cure the error.

■ Next, the State argues we should affirm because the prosecutor's error was harmless. We disagree. Improper closing remarks are not harmless when such remarks constitute a material factor in the conviction such that the jury may have reached an opposite result had the remarks not been made. *People v. Montefolka*, 287 Ill. App. 3d 199, 212 (1997). As discussed above, there was extensive conflict in the testimony presented at trial, and a reasonable possibility exists that the prosecutor's remarks about defendant's failure to take a polygraph examination damaged defendant's credibility and contributed to his conviction. Accordingly, we cannot say the prosecutor's error was harmless. See also *People v. Daniels*, 272 Ill. App. 3d 325, 345 (1995) (holding that when improper polygraph references are made, the proper result is to reverse and remand in order to "preserve the integrity of the judicial process in this State").

■ Finally, we have reviewed the evidence at trial and find it was sufficient for a trier of fact to conclude that defendant was guilty beyond a reasonable doubt. We are not making a determination of guilt or innocence that is binding on retrial. Rather, our consideration of

the sufficiency of the evidence removes the risk that defendant would be subject to double jeopardy. *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979).

For the foregoing reasons, we reverse and remand for a new trial. As a result of our disposition of this case, we need not address defendant's other contentions of error.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.