THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HECTOR HERRERO, Defendant-Appellant.

First District (5th Division) No. 1—99—0742

Opinion filed June 29, 2001.—Rehearings denied September 26, 2001.

878

QUINN, P.J., specially concurring.

Michael J. Pelletier and Jennifer Bonjean, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, Hector Herrero was convicted of possession of a controlled substance with intent to deliver. He was sentenced to 25 years in prison and now appeals that conviction. We affirm the conviction and remand it solely for a recalculation of a proper credit for time served on the mittimus for the following reasons.

## BACKGROUND

On September 9, 1997, the Chicago police received a tip from a confidential informant that a substantial amount of cocaine would arrive in the area of Kostner and Armitage, hidden in a red Buick. Based upon this tip, the police began their observation of the area.

Officer Loretta Huberts and her partner, Officer Manny Colon, were parked, watching the area under surveillance. Herrero arrived in a silver Honda and waited until a red Buick pulled up and parked in front of 4404 West Armitage in Chicago. Reinaldo De Jesus emerged from the red Buick and walked toward Herrero. De Jesus handed keys to Herrero and kept walking down the street to stand in front of 4400 West Armitage. Herrero went to the red Buick, opened up the passenger side door with a key, got in and slid over to the driver's side.

Herrero then turned on the ignition, depressed the brakes, and activated the left turn signal. He then dipped below the dashboard, out of view of the officers. He then closed the driver's side door, reached back, then got out of the car carrying a white plastic bag in his right hand. The bag was described by Huberts as "brick shaped[,] *** white and very transparent like one of those little shopping bags they give you at the grocery store *** and it was wrapped tightly around it." Officer Manny Colon described the same bag as a "white plastic bag which was like transparent type, more like one of those Jewel type or grocery type bags, rectangular." Colon also described the way Herrero was holding the bag as "like if it were a book." Both Huberts and Colon testified that, based on their experience in narcotics investigations, they thought the plastic bag contained a kilo of cocaine.

Herrero took the plastic bag and walked toward 4400 West Armitage. He and De Jesus went into the building. After a few minutes inside, Herrero emerged from the building and returned to the passenger side of the Buick. He then put the plastic bag in the car, shut the door and returned to De Jesus.

The police approached Herrero and De Jesus on foot. They identified themselves as police and told Herrero and De Jesus they were under investigation for possession of cocaine. The police asked Herrero to sign a consent form so they could search the silver Honda. He signed the form. Sometime after Herrero signed the form, more police arrived with Roxy, a drug-sniffing dog. The dog sniffed the silver Honda but did not alert on anything. Roxy was then allowed to sniff the red Buick, and the dog alerted. After Roxy alerted, the police decided to get a search warrant for the vehicle. The red Buick was impounded and taken to a police station.

Once the vehicle arrived, Officer Huberts attempted to reproduce the movements Herrero made in the car. When nothing happened, the police inspected under the dashboard. There were two little holes on the driver's side under the dashboard. They found a rat-tail comb stuck in the visor, the tail of which fit in the holes. Upon insertion of the comb, two traps popped open. On the passenger side, police found the white plastic bag Herrero had carried. It contained a kilo of what appeared to be cocaine. There were three more kilos of what appeared to be cocaine in that trap and three more kilos in the driver's side trap. All of the kilos except the one in the plastic bag bore emblems on them that looked like little pumpkins. Officer Huberts inventoried all the evidence found in the traps and personally carried it down to the crime lab for testing. When she got the evidence to the crime lab, Huberts testified she watched as the evidence was repackaged into boxes because they did not fit into evidence envelopes. She indicated the

crime lab personnel made her seal and initial the boxes. The crime lab people then gave her two receipts for the boxes.

The individual brick from the plastic bag carried by Herrero was inventoried with evidence number 1865259 while the remaining bricks bearing the "pumpkin" emblems were inventoried together and given the evidence number 1865258. In addition to the suspected drugs recovered, the police collected pagers, cellular telephones, money, identification and various other items from Herrero and his codefendant, De Jesus. The wrappings from some of the kilos were sent for latent print analysis, said examination revealing no such latent prints.

During the trial, Officer Thomas Jones of the asset forfeiture unit of the Chicago police testified over objection that the Buick had been sold after being forfeited in an uncontested administrative forfeiture proceeding. In overruling the objection, the trial court stated, "we might be getting to the good stuff now." Jones then testified that an administrative forfeiture had taken place.

Testimony was also heard from Jaime Zea of the Illinois State Police Crime Laboratory. Zea is a level-three forensic scientist who tested the evidence. Zea identified evidence labeled as evidence inventory numbers 1865258 and 1865259, but referred to number 1865259 as 1863552 once during the testimony. Zea weighed evidence number 1865259, finding it to weigh 958 grams. Zea testified that the brick was cocaine with a 95% purity level. No testimony was presented as to any analysis done on the six bricks inventoried under number 1865258. Following closing arguments, the jury found Herrero guilty of possession of more than 900 grams of a controlled substance. He was thereafter sentenced to 25 years in prison.

## I

On appeal, Herrero raises several issues. Herrero argues that he was not proven guilty beyond a reasonable doubt because the prosecution failed to establish a continuous chain of custody of the alleged contraband. He also argues that the prosecution failed to connect him to the package that was tested and found to be cocaine. Herrero also argues that he was denied a fair trial when, during closing arguments, the prosecutor commented on Herrero's exercise of his right to a jury trial. Herrero claims this encouraged the jury to make negative inferences that were designed to prejudice his case. Herrero also argues that it was prejudicial and irrelevant that he did not contest the forfeiture of the automobile since the line of testimony and questioning was designed to encourage the jury to assume that Herrero made some tacit admission. This was compounded when the trial court suggested in front of the jury that this line of questioning was "getting to the

good stuff." Herrero further argues that his fundamental rights were denied when jury selection was held without a Spanish interpreter. Even though Herrero voluntarily waived his right to an interpreter, he claims this waiver was not truly voluntarily made because the waiver discussion was also held in English, without benefit of a Spanish interpreter.

Finally, both Herrero and the prosecution agree that an error was made on the mittimus, which did not give him full credit for time he had already served. The prosecution does not contest Herrero's request for a recalculation.

## II

We address each of defendant's contentions on appeal in turn. Herrero first challenges the sufficiency of the evidence by which he was convicted. He argues there were defects in the chain of custody of the alleged contraband and a failure to connect him to the package which proved to be actual cocaine. The prosecution responds that Herrero must show actual evidence of the tampering he alleges. The prosecution also responds that, even though six of the kilos recovered may not have been conclusively proven to be cocaine, there was a sufficient quantity of evidence that was proven to be cocaine so as to conclusively demonstrate that Herrero is guilty of possessing over 900 grams of a controlled substance with the intent to deliver.

●1 A trial court has broad discretion in determining the admissibility of evidence, and we will not disturb its ruling on appeal absent an abuse of discretion and a showing of prejudice to the defendant. *People v. Lind*, 307 Ill. App. 3d 727, 740 (1999). Evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. Relevant evidence is evidence having any tendency to make the existence of a fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. *People v. Aguilar*, 265 Ill. App. 3d 105 (1994).

●2 The purpose of introducing the evidence and establishing the chain of custody is to connect the object, in this case drugs, to the defendant and the crime. *People v. Lach*, 302 Ill. App. 3d 593 (1998). The reason the State is required to prove the chain of custody was maintained is to negate the possibility of tampering or substitution, and, therefore, this requirement is applicable to demonstrative and real evidence that is easily subject to tampering or substitution without detection. *Lach*, 302 Ill. App. 3d at 593-94. The chain of custody must be of sufficient completeness to render it improbable that the item has been tampered with, exchanged or contaminated. To

establish a sufficient chain of custody, the State needs to show that it took reasonable protective measures after the substance was seized and that it was probable the evidence was not changed in any important respect or substituted. *Lach*, 302 Ill. App. 3d at 593-94; *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994).

Once the State has established the probability that the evidence was not compromised, and unless the defendant shows *actual evidence of tampering or substitution*, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence. *Lach*, 302 Ill. App. 3d at 593-94; *Bynum*, 257 Ill. App. 3d at 510; *People v. Tsombanidis*, 235 Ill. App. 3d 823, 833 (1992). Thus, even where there is a missing link in the chain of custody, trial courts have properly admitted evidence where there was testimony that sufficiently described the condition of the evidence when delivered which matches the description of the evidence when examined. *Bynum*, 257 Ill. App. 3d at 510. To establish a sufficient chain of custody, the State need not disprove every possibility that the evidence was tampered with. Rather, the State need only show that it was reasonably probable that the evidence remained unchanged in any important respect or was not substituted. *Lind*, 307 Ill. App. 3d at 740. In the absence of any tangible suggestion of tampering, alteration or substitution, it is sufficient if the State proves a reasonable probability that the article has not been altered. *People v. Ryan*, 129 Ill. App. 3d 915, 919 (1984).

The prosecution concedes that, with regard to the six kilos inventoried under evidence inventory number 1865258, it failed to establish that the substance tested was actually cocaine. The prosecution instead relies on the remaining evidence to support the conviction. It is the 958 grams of 95% pure cocaine bearing evidence inventory number 1865259 that it claims establishes Herrero's guilt of possession with intent to deliver. Absent a showing of actual evidence of tampering or substitution, the prosecution relies on the fact that discrepancies go to weight and not admissibility. *Lach*, 302 Ill. App. 3d at 594.

As to the brick with inventory number 1865259, the trial court relied upon the testimony of the forensic scientists in the crime lab and the police officers involved in the arrest to establish that the brick connected to Herrero is the same brick that proved to be cocaine. At one point in the direct examination, the prosecutor referred to the brick carried by Herrero as having inventory number 1863552 rather than 1865259. Prior to this, and after this, the prosecutor and witness referred to this brick as having inventory number 1865259. Further, at one point forensic chemist Zea testified that the box with inventory number 1865258 contained seven kilos rather than six kilos. However,

Zea also testified that the contents matched the inventory report, which said the boxes contained six kilos, and Zea testified the contents consisted of six kilos. The trial court found credible the testimony that the evidence would not fit into envelopes and had to be placed in larger containers. In light of the evidence presented, any questions remaining about the chain of custody were properly attributed by the judge to weight and not admissibility.

●3 A criminal conviction will not be set aside unless it is so improbable or unsatisfactory that a reasonable doubt as to the defendant's guilt still remains. *People v. Lane*, 319 Ill. App. 3d 162 (2001). When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Hall*, 194 Ill. 2d 305 (2000). The trier of fact is allowed to make all reasonable inferences from the evidence. *People v. Merritt*, 318 Ill. App. 3d 115 (2001).

●4 Witnesses' credibility and the weight to be given their testimony are determinations exclusively within the province of the trier of fact. *People v. Smith*, 318 Ill. App. 3d 64 (2000). Absent clear error on the part of the jury, the reviewing court should defer to the trier of fact. *People v. Eyler*, 133 Ill. 2d 173, 191 (1989). The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Smith*, 318 Ill. App. 3d at 73. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Hall*, 194 Ill. 2d at 330. Here, two police officers testified that they saw Herrero carry the brick of cocaine which was given inventory number 1865259 from the Buick into a building and then return the cocaine to the car. The jury was apprized of the chain of custody and the testing done on that brick. Defendant argued to the jury that these discrepancies were fatal to the State's case and they should find defendant not guilty. The jury's verdict that Herrero was guilty of possessing more than 900 grams of cocaine with the intent to deliver was supported by the evidence.

Herrero next asserts that he was unable to meaningfully participate in the jury selection process because he is primarily a Spanish-speaking individual and the trial court proceedings were conducted in English. The prosecution counters that Herrero was, at all times relevant, represented by English-speaking counsel who was never accused of having provided ineffective assistance. The prosecution also argues that the defendant's waiver was knowing and freely made, free of duress or misunderstanding. The record shows, according to the prosecution, that the defendant has enough of a command of the English

language to effectuate a valid waiver. The following discussion took place when the trial court learned that the interpreter could not be present for the jury selection process:

"DEFENSE: Mr. Herrero is a Spanish speaking individual. We ordered an interpreter and he isn't here. He understands well enough that if you want you can admonish him on the record. He understands well enough what is going on in terms of picking this jury. He doesn't have a problem and wants to proceed this way. Perhaps we should put that on the record and tomorrow morning when we do opening statements and evidence—

THE COURT: Mr. Herrero, would you step up here, please.

DEFENSE: I'm for sure that we would have an interpreter.

PROSECUTION: We would like to put on the record that neither one of these individuals ever needed an interpreter.

DEFENSE: I think the first time I was here with Mr. Herrero at the bond hearing didn't we?

I just wanted to be sure that the record is clear and that there is no alleged error later on we will want an interpreter for the trial and it should be no problem getting one tomorrow.

For the record, I have discussed with my client Mr. Herrero his desire to proceed this afternoon with picking the jury and he has indicated to me that he understands well enough for that portion of the trial and wants to proceed.

Mr. Herrero, is it your desire now to proceed with picking the jury?

HERRERO: Yes.

DEFENSE: Without an interpreter?

HERRERO: Yes.

DEFENSE: Do you understand what I'm saying to you now, is that correct?

HERRERO: Yes.

* * *

THE COURT: Mr. Herrero, have you understood the conversation that has taken place in the last ten minutes or so?

HERRERO: I understand a little bit.

THE COURT: Mr. Herrero, do you have any objection to picking the jury now without the interpreter?

HERRERO: No."

•5, 6 The decision to appoint an interpreter is within the trial court's discretion, and a conviction will be reversed only when an abuse of the court's discretion deprived the defendant of some basic right. *People v. Escalante*, 256 Ill. App. 3d 239 (1994). It is well settled that defendants have the right to appear and defend themselves in person at all stages of trial, including jury selection. Ill. Const. 1970,

art. I, § 8; U.S. Const., amend. XIV; *People v. Bennett*, 282 Ill. App. 3d 975, 978 (1996). Jury selection is a critical stage of trial. *People v. Bean*, 137 Ill. 2d 65, 84 (1990). In the absence of waiver by words or conduct, a defendant in a felony case has a constitutional right to be physically present at every "critical stage" of the proceedings. *People v. Lindsey*, 309 Ill. App. 3d 1031 (2000). A critical stage is any proceeding at which constitutional rights can be asserted or waived or where events occur that could prejudice the defendant's trial. *Lindsey*, 309 Ill. App. 3d at 1034, citing *People v. Young*, 201 Ill. App. 3d 521 (1990). A defendant may waive his right to be present if done voluntarily, knowingly, intelligently, and " 'with sufficient awareness of the relevant circumstances and likely consequences.' " *Bennett*, 282 Ill. App. 3d at 978, quoting *People v. Johnson*, 75 Ill. 2d 180, 187 (1979). The courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and do not presume acquiescence in the loss of fundamental rights. *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023 (1938).

●7 Defendant did not ask for an interpreter at any time during jury selection. Nor did defendant raise this issue in his motion for new trial. Consequently, the issue is waived. *People v. Enoch*, 122 Ill. 2d 176 (1988). This issue demonstrates the importance of raising all grounds for a new trial in a written motion filed in the trial court. The defense attorney made a representation to the court that defendant could understand the English language sufficiently to participate in *voir dire* and it was defendant's wish to proceed. If this were not the case, the issue could be raised in the motion for new trial. The trial court, which had seen the defendant on numerous occasions and accepted defendant's waiver of an interpreter for jury selection, could then have conducted any hearing necessary to resolve the issue.

Even if we were to find that this issue was not waived, defendant would still not prevail. At best, he is claiming he was constructively absent from the process, because he does have some command of the English language and was represented by counsel during the proceedings in question. He was not actively excluded from the jury selection process but rather chose to proceed in spite of the absence of an interpreter. Even if we were to assume that the facts of this case represent some sort of constructive absence, for fourteenth amendment purposes, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Bean*, 137 Ill. 2d at 83. The trial court characterized Herrero's decision to proceed with jury selection in the absence of an interpreter as a knowing and intelligent waiver. Since the absence of an interpreter at that stage does not seem to

have resulted in an unfair trial, at least as regards this issue, the harm to Herrero, if any, is minimal and harmless.

●8 Herrero argues that he was prejudiced by evidence that the auto from which the cocaine had been recovered had been sold after an uncontested forfeiture procedure. Defendant asserts that the jury could have taken this evidence as being a tacit admission on his part and the prejudice was enhanced when the trial court overruled his objection to the testimony stating, "We might be getting to the good stuff now."

The record reveals that the witness from the auto pound testified that the Buick was owned by Herrero's codefendant, Reinaldo De Jesus. The fact that De Jesus did not contest the forfeiture does not in any manner support an inference that Herrero made a tacit admission. As to the relevancy of this evidence, it would explain to the jury why it did not get to view the car and the traps in it. The judge's comment in no way prejudiced either party.

●9 Herrero's next argument is that he was denied due process and a fair trial when the trial court admonished the jury before deliberations that it could not receive transcripts of the testimony. The trial court instructed the jury that it could submit written questions to the court during the deliberation process by giving the questions to one of the deputies. Herrero argues that, while the trial court has discretion to refuse or grant a jury's request to review testimony, it commits an error when it refuses to exercise its discretion in the erroneous belief that it has none. He argues that, by preemptively deciding there could be no set of circumstances under which he would allow the jury to receive transcripts, the trial court was abusing its discretion. Herrero admits that he failed to raise this issue in the court below, but he argues that this court should reach the issue under the plain error doctrine, claiming the evidence is closely balanced and the remark affected his right to a fair trial.

The prosecution responds that, by failing to raise the issue, Herrero has waived its consideration by this court. Alternatively, the prosecution argues that the evidence in this case is not closely balanced, so the plain error doctrine is not applicable. We agree. Ordinarily, a defendant waives an issue for appellate review if he fails to both object at trial and raise the issue again in a post trial motion. *People v. Little*, 318 Ill. App. 3d 75 (2001). Whether or not the erroneous evidence or remarks were objected to at trial, a court of review will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from the error. *People v. Carlson*, 79 Ill. 2d 564 (1980). We cannot say, based on a review of all the attendant facts and circumstances of this case, that the actions of the trial

court affected a substantial right. Herrero's claim in this area is simply too speculative.

Herrero next contends that certain comments by the prosecutor were improper. Specifically, Herrero objects to how prosecutor Kevin Hughes commented on Herrero's exercise of his right to a jury. Herrero argues that such comments encouraged the jury to draw negative inferences which tainted the judicial process. During opening arguments, Hughes commented "now they wanted a jury trial and you have to ask yourselves why do they want a jury trial." The trial court sustained a defense objection to this comment. In answer to his own comments, Hughes then continued, saying "These individuals are gamblers, they live on the edge, they hope that they can get one of you to be suckered in, one of you to believe that they are not guilty of possession of a controlled substance with intent to deliver." No objection was made to this last comment.

The prosecution disputes Herrero's claim that the prosecution's comments deprived him of a fair trial. The prosecution contends that its comments were invited by the facts and circumstances of the case and, in any event, this issue was waived by the failure of the defense to properly preserve the issue before the trial court. The prosecution argues that, because the ultimate issues in this case are not closely balanced, there is no justification for relaxing the standards in the issue of waiver.

The prosecution generally has wide latitude in fashioning its closing argument, and reversal is unwarranted unless the prosecution's comments substantially prejudice the defendant. *People v. Rios*, 318 Ill. App. 3d 354 (2000). Generally, the prosecution in closing arguments has the authority to comment on the evidence, draw inferences therefrom and comment on the accused's credibility. *People v. Miller*, 302 Ill. App. 3d 487, 495 (1998). Challenged remarks must be viewed in the context of the closing arguments as a whole. *People v. Kirchner*, 194 Ill. 2d 502 (2000). A defendant is substantially prejudiced by a comment if it is impossible to say whether it resulted in the verdict of guilty. *Rios*, 318 Ill. App. 3d 354. Improper closing remarks are not harmless when such remarks constitute a material factor in the conviction such that the jury may have reached an opposite result had the remarks not been made. *People v. Eaton*, 307 Ill. App. 3d 397 (1999); *People v. Montefolka*, 287 Ill. App. 3d 199, 212 (1997). The Illinois Supreme Court has recognized that an insinuation that leaves the jury to speculate may be more prejudicial than erroneously admitted specific proof. *People v. Emerson*, 97 Ill. 2d 487 (1983).

●10 For prosecutor Hughes to have commented on Herrero's decision to exercise his constitutional right to a jury is outrageous, casting

a shadow over the proceedings that simply cannot be ignored. Courts cannot countenance prosecutors invading the substantive rights of the accused by making comments that would penalize a defendant for the use of his constitutional rights. *People v. Meredith*, 84 Ill. App. 3d 1065, 1073 (1980). In his concurrence in the case of *Grunewald v. United States*, 353 U.S. 391, 425-26, 1 L. Ed. 2d 931, 955, 77 S. Ct. 963, 984-85 (1957) (Black, J., joined by Douglas, C.J., and Brennan, J., concurring), Justice Black observed so eloquently:

> "[There are] no special circumstances that would justify the use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems particularly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution."

Additionally, the suggestion that alleged criminals like Herrero are attempting to "sucker in" or dupe the jurors speaks for itself, since it would have the tendency to improperly shift the focus of attention away from the actual evidence in the case. *People v. Fluker*, 318 Ill. App. 3d 193 (2000).

However, because this was not a close case on the evidence of guilt, we find that, even with the problems created by the prosecutorial misconduct, the amount of cocaine attributable to Herrero is so large and the connection to Herrero so strong that it renders the prosecutor's comments harmless. This is not to say that conduct such as that described here would be harmless in all situations. The goal should be to provide criminal defendants with a fair trial. This court deplores the conduct of the prosecution. In spite of that, in light of the totality of the record before us, the defendant's conviction of possession of a controlled substance with intent to deliver is affirmed.

Affirmed and remanded solely for a recalculation of time served by the defendant as reflected on the mittimus.

Affirmed.

THEIS, J., concurs.

PRESIDING JUSTICE QUINN, specially concurring:

I concur in the holding of the majority in affirming defendant's conviction and sentence. I write separately to address two issues which I believe are significant.

First, I believe the majority cites an erroneous standard for

determining whether a prosecutor's improper closing argument should result in reversal. Our supreme court recently reiterated that the test for reversing a conviction based on the remarks of a prosecutor "is whether the jury would have reached a contrary verdict had the improper remarks not been made. See *People v. Cisewski*, 118 Ill. 2d 163, 175 (1987)." *People v. Heard*, 187 Ill. 2d 36, 73 (1999). *Cisewski* phrased the standard thusly—"To constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different." *People v. Cisewski*, 118 Ill. 2d at 175. When the court in *People v. Eaton*, 307 Ill. App. 3d 397, 402 (1999), held that reversal is required where the jury "may have reached an opposite result had the remarks not been made," it cited *People v. Montefolka*, 287 Ill. App. 3d 199, 212 (1997). The court in *Montefolka* cited the holding in *People v. McCall*, 190 Ill. App. 3d 483, 493 (1989), for this standard. The court in *McCall* cited the holding in *People v. Panczko*, 86 Ill. App. 3d 409, 413 (1980). *Panczko* was decided seven years before *Cisewski*. I believe the correct standard is that enunciated in *Cisewski*.

Second, I strongly disagree with the majority's decision to put the name of the assistant State's Attorney who made the improper remarks into the opinion. This case is the first time that an Illinois court of review has held that the sixth amendment right to a jury trial may not be negatively commented upon by the prosecution. I agree with this holding. The Colorado Supreme Court in *People v. Rodgers*, 756 P. 2d 980, 983 (Colo. 1988), held: "It is impermissible for a prosecutor to make comments 'which ha[ve] the effect of creating an inference of guilt by reference' to the defendant's exercise of his right to a trial by jury. [Citation.]" While I agree with this holding, it is the only case cited by the defendant where a court of review directly made such a holding. The cases cited by the majority as support for our finding are not nearly as directly on point. In *People v. Meredith*, 84 Ill. App. 3d 1065 (1980), the prosecutor told a jury that it should infer guilt from the fact a defendant phoned his lawyer before questioning. In *Grunewald v. United States*, 353 U.S. 391, 1 L. Ed. 2d 931, 77 S. Ct. 963 (1957), the trial court instructed a jury that it could consider a defendant's refusal to testify before a grand jury in determining the truthfulness of his testimony at trial. While one would hope that common sense would prevent a prosecutor from arguing that a jury should somehow infer that a defendant is more likely guilty because he has chosen to be tried by a jury, making an argument that lacks common sense is usually not grounds to have one's legal career put into jeopardy.

In this case, the defense attorney objected to the prosecutor's com-

ment that "you have to ask yourselves why do they want a jury trial." The trial court immediately sustained this objection. No objection was made to the prosecutor's next statement that the defendants "hope that they can get one of you to be suckered in." It is well-settled law that to the extent that a defendant failed to object to a prosecutor's comments at trial or specifically include them in his motion for a new trial, his argument is waived on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). One of the reasons for this is that by failing to object, defense counsel has deprived the trial court of an opportunity to rule on the issue and minimize any prejudice. Another reason to find an issue waived when no objection has been made is that it may be the defense counsel's trial strategy to minimize his objections. This strategy allows defense counsel to reply to the State's faulty argument. Another reason to find waiver in the absence of an objection is that the trial court is deprived of the reasoning of the parties—why the prosecutor said what he said and why defense counsel objected. The Supreme Court noted this in the context of reviewing closing arguments when they posited: "we do not think that an appellate court may substitute its reading of ambiguous language for that of the trial court and counsel." *United States v. Robinson*, 485 U.S. 25, 31, 99 L. Ed. 2d 23, 30, 108 S. Ct. 864, 868 (1988). Here, while defense counsel evidently believed the prosecutor's statement did not merit an objection, the majority have thought it significant enough to warrant naming the prosecutor.

It is my belief that naming a prosecutor who has committed what we determine to be error is a very significant sanction. One may understand how significant a sanction it is by noting how rarely it is done. I do not mean to suggest that courts of review should never name a prosecutor who has committed error. I do believe courts of review have an obligation to apply a reasoned analysis to this decision.

I believe one of the primary reasons prosecutors make improper arguments is the phraseology used by the courts of review. We refer to any error that does not result in reversal as "harmless." In analyzing even highly improper arguments, courts of review have a strong tendency to address the issue with no more analysis or comment than is necessary to answer the question of whether the case should be reversed because of it. This procedure provides little guidance to the trial courts or to the prosecutors who are given the task of trying literally hundreds of jury trials every year throughout the state. Based on the fact that many improper arguments are repeated after a court of review has addressed a prosecutor's similar comments by making a cursory finding that they constituted "harmless error," it is apparent that many prosecutors take this finding to mean that the comments

may be repeated in the future. In those instances where a court of review determines that a prosecutor's comments constitute error, the reviewing court should plainly say the comments were improper even when the comments do not rise to the level of reversible error.

Courts of review need to more effectively communicate to the trial courts and the bar that preventing unprofessional conduct during trial is of paramount importance. I agree with the majority that there are times when a legitimate way to accomplish this goal is to name the lawyer who engages in professional misconduct. However, based on the manner in which the courts of review currently employ this device, one might be concerned that it is only applied against prosecutors or other government lawyers. I do not believe this is necessarily because they engage in more unprofessional conduct than other counsel. If one were to look at orders or opinions which find defense counsel to have been incompetent, they are rarely named. Anecdotally, some of the most egregious examples of unprofessional conduct I have seen have arisen in civil cases. By no means do I wish to deprecate the seriousness of the problems caused specifically by prosecutorial misconduct. I merely wish to point out that improper conduct can be found across the spectrum of all litigation and courts of review need to address it in a consistent manner whenever it is found.

I know that the decision by courts of review to name attorneys whom we have determined to have committed misconduct is not made lightly. An attorney's ability to practice law or to be elected or appointed to the bench will often be negatively impacted upon by being named. When we impose this sanction, we should do so only when the misconduct engaged in warrants it.

In making this decision, courts should consider many things, as each case depends on its own facts. Perhaps the most important consideration in assessing an improper argument is the nature and extent of the statements made. *People v. Blue*, 189 Ill. 2d 99, 132 (2000). Professor Paul J. Spiegelman analyzed 45 reversals due to improper closing argument in the federal courts of appeal from the late 1980s to the late 1990s in a law review article: P. Spiegelman, *Prosecutorial Misconduct in Closing Argument: The Role of Intent in Appellate Review*, 1 J. App. Prac. & Process 115 (1999).

In analyzing the 45 reversals, Spiegelman put the arguments into eight categories; (1) commenting on the accused's failure to testify; (2) depriving the defendant of his sixth amendment right to confront witnesses against him; (3) undermining the right to a reliable death verdict; (4) arguments known to be false; (5) undermining the presumption of innocence or burden or proof; (6) arguing post-*Miranda* silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed.

2d 91, 96 S. Ct. 2240 (1976); (7) appealing to racial or ethnic prejudice; and (8) engaging in what would normally be nonconstitutional error, but in a manner so prejudicial it denies the right to due process. I would add to this list many other categories of arguments, the most common being appealing to the sympathy of the jury for the victim, commenting on evidence that was admitted for a purpose other than that argued, and calling the defendant names. I list these categories only as examples, not as a comprehensive list. The types of arguments that courts of review have determined to be improper are far too numerous to mention here. I give these examples to illustrate the fact that improper arguments vary greatly in their egregiousness.

I believe another important factor for courts to consider in determining egregiousness is how purposeful the improper conduct was. Professor Spiegelman argues that this should really not be a factor in determining whether a case should be reversed. As in 41 of the 45 federal cases Professor Spiegelman analyzed, Illinois courts have long taken into consideration the purposefulness of the prosecutor's actions in determining whether a case should be reversed. In *People v. McCann*, 247 Ill. 130, 170 (1910), our supreme court held: "Unless the court can see that statements are unprovoked or so foreign to the case as to be *calculated* to produce a result which otherwise would not have been reached, a judgment of conviction will not be reversed on that ground." (Emphasis added.)

I believe that when a court is making a decision whether to name an attorney who has committed misconduct, it is imperative to consider whether that misconduct was purposeful. Naming an attorney is a severe sanction and it should not be imposed absent purposeful misconduct. This being so, another factor to consider is whether the attorney violated a well-settled principle of law or a principle just announced (as here). Another factor to consider, but one difficult to determine, is how experienced the prosecutor was. This goes to the element of purposefulness, as more experienced prosecutors should be more familiar with the law.

As pointed out earlier, courts should consider whether the improper argument was objected to. Even more importantly for the purposes of this discussion is whether the trial court sustained or overruled the objection. When an attorney persists in the comments after the court sustains an objection, the attorney's actions are clearly purposeful. *People v. Fletcher*, 156 Ill. App. 3d 405, 411 (1987). Of course, this is also an important factor to consider when determining whether a prosecutor's actions constituted misconduct or the trial court made an erroneous evidentiary ruling which was then relied upon by the prosecutor.

The timing of the improper argument is also significant. It is harder to find "invited comment" in a prosecutor's opening close (as here). *People v. Tate*, 156 Ill. App. 3d 950 (1987). As the majority correctly notes, we must consider the argument in question in the context of the case and in the context of the arguments as a whole. To this I would add that we should consider the defense theory of the case.

While I disagree with the majority for naming the prosecutor under the circumstances of the present case, perhaps it will have the salutary effect of encouraging the bar and the judiciary to give thought as to how to address the issue of attorney misconduct. As always, there are many more questions than answers, but it is the duty of the courts of review to answer those that we can.